**David DeVOTO and Charles S. Volk, Plaintiffs,**

v.

**PACIFIC FIDELITY LIFE INSURANCE COMPANY and Bankers Mortgage Company of California, Defendants.**

**No. C–70–1509.**

United States District Court, N. D. California.

Jan. 29, 1973.

Joseph L. Alioto, Joseph M. Alioto, San Francisco, Cal., for plaintiffs.

William H. Orrick, Jr., William F. Alderman, San Francisco, Cal., for defendants.

## MEMORANDUM AND JUDGMENT

SPENCER WILLIAMS, District Judge.

Plaintiffs brought this private civil action under Section 4 of the Clayton Act (15 U.S.C. § 15) alleging injury through violations of Section 1 of the Sherman Act (15 U.S.C. § 1). The two defendants (Pacific Fidelity Life Insurance Company and Bankers Mortgage Company of California) have moved for summary judgment on four separate grounds pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have moved for summary judgment on the issue of liability.

Defendant Bankers Mortgage [Bankers] is in the business of making real estate loans secured by mortgages. Defendant Pacific Fidelity Life Insurance Company [Pacific Fidelity] sells life, ac-

cident, and health insurance throughout the United States. Both defendants were subsidiaries of Transamerica Corporation at all times relevant to this action.

One aspect of Pacific Fidelity's business is the sale of mortgage protection insurance. Basically, this is insurance sold to a mortgagor to insure the payment of his mortgage in the event he dies or is disabled. Bankers does not itself sell mortgage protection insurance to its customers but will assist an insurance company in either of two ways. It will supply the insurance company with the names of its customers and/or will cooperate with it in a direct mail solicitation of its mortgagors. In exchange for these services, Bankers receives either commissions on mortgage protection insurance sold to its customers or a flat fee per name supplied.

In 1967 and 1968, Defendant Pacific Fidelity had an exclusive agreement with Defendant Bankers relative to the above described services. At this same time Plaintiff DeVoto was conducting business under the name of Market Placement Agency. Market Placement was engaged in the business of providing special insurance programs to businesses throughout the western United States and Plaintiff Charles Volk was employed by it as a general agent. Late in 1967, Volk contacted Bankers and offered a new mortgage protection insurance solicitation plan on behalf of American Home Assurance Company which, among other things, provided for the payment of one dollar and twenty-five cents ($1.25) for each customer's name supplied by Bankers. Bankers was impressed with the plan and elected to enter into a contract with American Home and to cease dealing exclusively with Pacific Fidelity. Bankers also agreed to cooperate with American Home in a direct mail solicitation of its mortgagors. The contract between Bankers and American Home was signed in January 1968.

Undaunted by this turn of events Pacific Fidelity made Bankers a new offer in April 1968 closely resembling the American Home plan, in which they sought to replace American Home and make the mass mail solicitation that American Home had planned with Bankers' cooperation for the fall of 1968.

In June 1968, Bankers informed American Home that they had decided to accept Pacific Fidelity's offer and to abrogate the agreement with American Home. The ensuing "supplemental" agreement executed by Pacific Fidelity and Bankers provided Bankers a flat rate of $1.25 per name and contains numerous other features similar to the abrogated American Home agreement.

In considering this motion for summary judgment, the court must look at the record in the light most favorable to the non-moving party and determine whether genuine issues as to material facts exist for determination by the trier of fact. If there are no genuine issues of material fact in dispute, the court may enter judgment as a matter of law.

The four separate bases for defendants' Rule 56 motion hereafter separately discussed are:

1) The McCarran-Ferguson Act insurance business exemption.

2) Plaintiffs' lack of standing to sue.

3) Absence of any allegations showing acts in or having any effect upon interstate commerce; and

4) Absence of any allegations indicating acts having anti-competitive effect or purpose.

## McCARRAN-FERGUSON ACT

The McCarran-Ferguson Act [15 U.S.C. § 1011 et seq.] provides that the "business of insurance" will be regulated by state law and, in the absence of coercion, intimidation, or boycott, will not be subject to the federal antitrust laws. Thus, defendants reason, since their actions took place within "the business of insurance," it is beyond the reach of these plaintiffs in this court. The defendants' business activity attacked in the complaint is merely pe-

ripheral to the insurance business. In essence, Pacific Fidelity and American Home were competing for a list of Bankers' customers and plaintiffs cite no relevant authority for their position that the McCarran-Ferguson Act exempts *this* type of activity from the Sherman and Clayton Acts.

■ The role of insurance in our complex commercial society is pervasive. Insurance companies with their policies, their agents, and their customers touch and concern all commercial activity. The McCarran-Ferguson Act did not purport to make state legislation supreme in regulating all the activities of insurance *companies*. It does allow the states to regulate the *business* of insurance [Securities Exchange Commission v. National Securities, Inc., 393 U.S. 453, 459, 89 S.Ct. 564, 21 L.Ed.2d 668 (1968)] [1] but such business is not the subject of this litigation.

## STANDING

■ Defendants' assertion that plaintiffs' lack standing to sue is without merit. Contrary to their argument, the Ninth Circuit recognized a private cause of action for persons foreseeably, albeit incidentally, harmed by antitrust violations that cause direct injury to a third party. Mulvey v. Samuel Goldwyn Productions, 433 F.2d 1073 (9th Cir. 1970), cert. denied, 402 U.S. 923, 91 S.Ct. 1377, 28 L.Ed.2d 662 (1971). Plaintiffs Volk and DeVoto were substantially and foreseeably affected by Bankers' abrogation of its agreement with American Home.

## INTERSTATE COMMERCE

Defendants vigorously deny plaintiffs' allegations that their conduct was directly in or affected interstate commerce. The court agrees.

The complaint and affidavit accompanying this motion show both plaintiffs

to be residents of California. Defendants Pacific Fidelity Bankers Home, and plaintiffs' employer Market Placement are all California businesses with their principal places of business in California. Defendants' uncontroverted affidavit states that all communications between the plaintiffs and all communications between Pacific Fidelity and Bankers occurred in California. American Home with general offices in New York City is admitted to have had interstate communications with Bankers but, as shown below, this fact does not provide Sherman Act jurisdiction.

■■ Two tests are used to determine whether business activity involves interstate commerce: (1) whether the activity complained of occurred within the flow of interstate commerce or (2) whether the acts complained of, while intrastate, substantially affected interstate commerce. Las Vegas Merchant Plumbers Association v. United States, 210 F.2d 732, 739–740 n. 3 (9th Cir. 1954). In the Ninth Circuit, the question is not whether the acts complained of affected a *business* engaged in interstate commerce but whether the acts affected *the interstate commerce part of the business*. Sun Valley Disposal Co. v. Silver State Disposal Co., 420 F.2d 341, 343 (9th Cir. 1969). The court thus must consider whether the acts of Defendants Pacific Fidelity and/or Bankers, which are the subject matter of this action, were in or substantially affected interstate commerce. The fact that the business of mortgage protection insurance involves and substantially affects interstate commerce is irrelevant to this question.

The acts of the defendants were conducted primarily in California. While it is true that notification of Bankers' intent to breach its agreement with American Home was interstate, this is not the substance of the plaintiffs' action. The

1. S. E. C. v. National, *supra*, points out that the relationship between insurer and insured, the type of policy issued, its reliability, interpretation and enforcement are the core of the "business of insurance." The focus of the statutory term was on the relationship between the insurance company and the policy holder. 393 U.S. 453, 460, 89 S.Ct. 564 (1968).

other actions of the defendants were essentially intrastate. Pacific Fidelity's attempts to induce Bankers to breach the agreement with American Home took place in California. All agreements between Pacific Fidelity and Bankers originated and were consummated in California. This activity therefore cannot be said to have been directly in the flow of interstate commerce. Cartrade, Inc. v. Ford Dealers Adv. Ass'n of Southern California, 446 F.2d 289 (9th Cir. 1971).

Of course, liability is not contingent on the activity being directly "in" interstate commerce; it is sufficient that the activity substantially affect interstate commerce. Defendants argue that the breach did not substantially affect interstate commerce; indeed, it is their contention that the breach had *no* effect on interstate commerce.

The complaint and the affidavits before this court indicate that the' intended consumers of the insurance programs, Bankers' mortgagors, were in California.[2] Even if this were not só, the insurance program eventually offered to customers by Pacific Fidelity was essentially the same insurance that American Home had planned to offer. Plaintiffs have not indicated that the number of customers who purchased the mortgage protection insurance under the new Pacific Fidelity program was a substantial increase or decrease from the number who would have purchased the same program from American Home. Accordingly, since the court cannot assume that a change in insurance companies offering the same policy would greatly effect the number of policies eventually sold, there is no basis for believing that the acts of the defendants have had any, much less a substantial, effect on interstate commerce. The Ninth Circuit rule set out in Cartrade, Inc. v. Ford Dealers Adv. Ass'n of Southern California, *supra*, compels this court to grant defendants' motion for summary judgment.

## ANTI-COMPETITIVE EFFECT OR PURPOSE

■ Even had this court found the necessary interstate activity defendants' motion for summary judgment must still be granted. The alleged activity of Pacific Fidelity and Bankers is, as a matter of law, beyond the purview`of Section 1 of the Sherman Act.

For the purposes of this action, Bankers was a mere supplier of names. They sold their customer list. Pacific Fidelity had been buying these lists since 1964. In 1968 American Home offered to buy the list from Bankers and Bankers found their offer more attractive than the existing arrangement with Pacific Fidelity. Pacific Fidelity, realizing it had been outbid for the list, made another offer to Bankers in an effort to save the contract. This second Pacific offer was strikingly similar to the American Home package and Bankers, for reasons of their own which are not relevant here, decided to resume its exclusive arrangement with Pacific Fidelity.

Competition in the sale of mortgage protection insurance and in the sale of the customer list was hardly restrained. On the contrary, there was an offer and counter-offer process that convinced Pacific Fidelity to revamp its mortgage protection insurance program with Bankers and to rebid for the customer list and Bankers' cooperation. Unfortunately for the plaintiffs and American Home, Pacific Fidelity was successful and regained the contract. The court points out that American Home was free to offer its mortgage insurance plan to Bankers' customers. Possession of the customer list and cooperation from Bankers in a direct mail solicitation

---

2. In his opposition to this motion and in oral argument, plaintiffs' counsel represented to the court that some of Bankers' customers were in Nevada. However, this unsworn statement did not indicate a percentage, was not supported by affidavits and cannot be considered under Rule 56 of the F.R.Civ.P.

would certainly have been helpful to American Home but the list merely facilitated the sale of insurance and its loss cannot be said to have foreclosed the possibility of their sale of insurance to Bankers' mortgagors by American Home.

Plaintiffs cite Flinkote Co. v. Lysfjord, 246 F.2d 368 (9th Cir. 1957) for the premise that an anticompetitive effect or purpose resulting from the refusal to deal with American Home is unlawful. *Flinkote* presented a clearly different situation than the instant case; in that case, there was evidence of a common scheme among plaintiff's competitors to drive him out of business by boycott. There has been no suggestion that Pacific Fidelity, a competitor, and Bankers, a non-competitor, entered into a scheme to drive American Home out of the mortgage insurance business in California. Neither does the record show that Bankers and Pacific Fidelity were attempting to fix prices on the insurance policies. No allegation has been made and no affidavits have been offered to show that Bankers "tied" the sale of Pacific Fidelity's insurance to the mortgage dealings with their customers. Plaintiffs' cited authority dealing with "tying" arrangements must be disregarded.

This case is closely analogous to the "refusal to deal" antitrust cases. The critical question is not whether there was a refusal to deal (or an inducement, or combination, to refuse to deal), but rather, whether the refusal to deal is so anticompetitive in purpose or effect as to be an unreasonable restraint of trade. Alpha Distributing Co. of Calif. v. Jack Daniel Distillery, 454 F.2d 442 (9th Cir. 1972), citing Joseph Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969); Walker Distributing Company v. Lucky Lager Brewing Co., 323 F.2d 1 (9th Cir. 1963). The court finds that there are no genuine issues of material fact concerning the transaction between the parties. The record does not indicate that the anticompetitive effect, if any, that might have resulted unreasonably restrained trade. Bankers' motive for breaching the agreement with American Home was based on business reasons. Pacific Fidelity, spurred by American Home's bidding, revamped its old mortgage insurance package and matched American Home's offer. The court does not find either of these motives, nor the effect of the defendants' acts, to constitute an unreasonable restraint of trade under the rule of *Alpha Distributing Co.* and *Hawaiian Oke, supra.*

This court need not, and does not, express any opinions on the merits of possible state causes of action in tort or contract that might lie as a result of the defendants' actions.

For the reasons stated above, defendants' motion for summary judgment is hereby granted and plaintiffs' motion for partial summary judgment on the issue of liability is denied.

It is so ordered.