GATEWAY ASSOCIATES, INC., a corp., et al., Plaintiffs,

v.

ESSEX–COSTELLO, INC., a corporation, et al., Defendants.

No. 74 C 1185.

United States District Court,
N. D. Illinois, E. D.

Aug. 28, 1974.

Ronald L. Futterman, Pressman & Hartunian, Chicago, Ill., for plaintiffs.

Eugene L. Resnick, and R. W. Hillsberg, Chicago, Ill., Paul W. Meinhardt, and John D. Kightlinger, Arlington Heights, Ill., Franz & Franz, Crystal Lake, Ill., Henry A. Preston and Dale R. Crider, Sidley & Austin, Jenner & Block, Chicago, Ill., Mark. J. Muscarello, Elgin, Ill., for defendants.

## MEMORANDUM OPINION

AUSTIN, District Judge.

This antitrust action is presently before the Court on the following defense motions: (1) to dismiss Counts I and II (Sherman Act Claims) for lack of subject-matter jurisdiction; (2) to dismiss Counts III through V (state antitrust and common law tort claims) for lack of pendent jurisdiction; (3) to strike Counts IV and V as being improperly joined; (4) to join two persons as indispensable parties defendant or else dismiss the action; (5) to dismiss the action as to some defendants for lack of personal jurisdiction; (6) to dismiss Counts I through V for failure to state a claim upon which relief may be granted; and (7) to stay the proceedings pending arbitration.

### I.

The alleged facts in this case are as follows:

Defendant Crystal Lake Associated Listing Service ("ALS") is an unincorporated trade association of real estate brokerage firms in the Crystal Lake, Illinois area. Among other things, ALS operates a multiple listing service whereby its members pool their listings and agree to split real estate commissions (generally on a 50–50 basis) when

one member obtains a buyer for property originally listed with another. Only members may subscribe to the ALS listing service; but firms outside the Crystal Lake area are generally allowed to participate in the real estate commission generated by a sale on a 50–50 basis when they provide a buyer for property listed by an ALS member. As a whole, ALS accounts for over 80%, or $60,000,000.00, of the total sales of real property listed with brokers in the Crystal Lake area. The other defendants are realty brokerage firms and associated brokers and owners who are all ALS members.

Plaintiff Gateway Associates, Inc. ("Gateway") is a realty brokerage firm operating in the Crystal Lake area. The individual plaintiffs are real estate brokers who founded Gateway in December of 1973 after leaving the employ of some of the defendant firms.

As a general rule, a real estate firm which seeks buyers for a residence listed with it has a substantially greater chance of making a rapid sale if it has access to a multiple listing service such as that provided by ALS. Thus, ALS membership appears to be both desirable and necessary for the successful operation of a real estate brokerage firm in Crystal Lake. Most homeowners who put their property up for sale know which firms subscribe to a multiple listing service; and usually, they engage one of them as their real estate agent.

Shortly after Gateway began operating in the Crystal Lake area, the defendants allegedly commenced certain anti-competitive activities which form the core of plaintiffs' claims. Briefly, they are as follows: (1) discriminating between Gateway and other non-members of ALS with regard to the percentage of shared real estate commissions; (2) boycotting Gateway house tours and excluding Gateway from their tours; (3) denying Gateway ALS membership; (4) refusing to exchange listing sheets with Gateway; (5) attempting to coerce Gateway to charge the uniform commission rates set by ALS by making the percentage of shared commissions higher for those non-members of ALS who adhere to the fixed rate than for those who charge a lower rate; (6) ignoring contract offers submitted by Gateway for its customers; (7) attempting to prevent Gateway from showing ALS listings to prospective buyers who have retained Gateway as their agent; (8) making defamatory remarks with regard to Gateway and its employees, and attempting to induce Gateway customers to break their contracts with Gateway; (9) in general, harassing Gateway employees and engaging in predatory conduct so as to prevent them from engaging in their work.

## II.

### A. LACK OF SUBJECT-MATTER JURISDICTION—COUNTS I AND II.

Actually, defendants move to dismiss Counts I and II for failure to state a claim because, they contend, plaintiffs inadequately allege the involvement of interstate commerce. However, their argument is directed at the jurisdictional aspects rather than the substantive aspects of interstate commerce in a Sherman Act claim. Accordingly, the motion shall be considered as one pursuant to F.R.Civ.P. 12(b)(1) to dismiss for lack of subject-matter jurisdiction.

Plaintiffs' "trade and commerce" allegations read as follows:

"15. Because of the transient nature of a significant portion of the population of Crystal Lake, Illinois, and its surrounding areas, a substantial number of persons using the services of the defendants in connection with real estate purchases and sales are persons moving into the Crystal Lake area from places outside the State of Illinois, and persons moving from the Crystal Lake area to places outside of the State of Illinois. At all times mentioned herein, defendants attempt to, and do, attract buyers and sellers from other states, and, in fact, many completed sales of real estate in which defendants have participated as

brokers involve buyers or sellers from outside the State of Illinois. In 1973, a not insubstantial portion of the nearly $60,000,000 in sales of real estate accounted for by ALS members involved persons who were either moving to Crystal Lake from outside the State of Illinois, or from Crystal Lake to locations outside the State of Illinois.

"16. As a part of their services, the defendants advertise their real estate listings and brokerage services nationally in magazines and newspapers widely circulated throughout the United States, and on billboards located at airports and other places of interstate transportation in order to solicit out-of-state buyers and sellers. Such advertising is intended to, and does, affect the aforesaid interstate movement of persons and commerce. They also solicit buyers and sellers by interstate use of mails and telephone.

"17. The defendants solicit directly multistate corporations engaged in interstate commerce. These corporations employ highly mobile persons in many parts of the United States who, when they move from state to state, in accordance with the demands of their employment, require homes in Crystal Lake, Illinois, or the surrounding area, or who must sell homes located in that area in order to relocate in other states. Such advertising, solicitation, purchases and sales affect the interstate commerce of American corporations and other businesses and also affect the interstate movement of persons engaged in interstate commerce.

"18. Many defendants are participating in nationwide multiple listing or relocation servies, whereby listings obtained by them are transmitted across state lines and listings obtained by out-of-state brokers are transmitted to them in Illinois across state lines. These activities tend to create nationwide exposure for the purchase and sale of real estate located in Crys-

tal Lake, Illinois and surrounding areas.

"19. In connection with their services, defendants negotiate or participate in the negotiation of real estate sales among out-of-state buyers and sellers. Thus, they negotiate such terms as price, financing, security, dates of surrender and possession, etc., all of which affect the flow of persons and commerce to and from the State of Illinois.

"20. As an additional part of their service, defendants often assist their clients in securing financing necessary for the purchase of real estate in Crystal Lake, Illinois and surrounding areas and in obtaining property and title insurance for it. Such financing and insurance is frequently obtained from sources outside of Illinois and moves in interstate commerce into the State of Illinois through the activities of the defendants.

"21. Substantial amounts of money flow into Crystal Lake, Illinois and its surrounding areas from outside the State of Illinois as secondary mortgage money, based upon completed transactions in the sale of real estate by the defendants, said transactions being secured by Conventional FHA insured and VA guaranteed mortgages.

"22. Defendants collect and remit monies mailed to and from places outside the State of Illinois in connection with the sale and financing of real estate sales."

■ When the issue is whether jurisdiction exists in an antitrust suit, the focus is on whether the defendants' conduct—unreasonably restrictive of competition or not—has a sufficient impact on interstate commerce to justify regulation under the commerce clause, Gough v. Rossmoor Corporation, 487 F.2d 373, 376 (9th Cir. 1973); and the question is not whether the acts complained of affect a business engaged in interstate commerce, but rather, whether that conduct affects the interstate commerce of

that business. Page v. Work, 290 F.2d 323, 330 (9th Cir. 1961), cert. denied, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76.

■ There are two tests to determine whether interstate commerce is involved: (1) whether the acts complained of occurred within the flow of interstate commerce, or (2) whether the acts, although wholly intrastate, substantially affect interstate commerce. *See, e. g.,* Burke v. Ford, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967); Radient Burners, Inc. v. Peoples Gas Co., 364 U. S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); Las Vegas Merchant Plumbers Association v. United States, 210 F.2d 732 (9th Cir.), cert. denied, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954); Kallen v. Nexus Corp., 353 F.Supp. 33, 34–35 n. 3 (N.D.Ill.1973); DeVoto v. Pacific Fid. Life Ins. Co., 354 F.Supp. 874, 877 (N.D.Cal.1973). In either case, the transactions complained of must affect or have an effect on interstate commerce, or the jurisdictional requirements of the statute are not satisfied. Las Vegas Merchant Plumbers Ass'n v. United States, *supra,* 210 F.2d at 739–740 n. 3. If said activities *might* have a substantial and harmful effect upon interstate commerce, that will be sufficient to confer jurisdiction upon the federal courts. A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal, 484 F.2d 751, 758 (7th Cir.), cert. denied, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

In United States v. Atlanta Real Estate Board, 1972 Trade Cases Par. 73,-825 (N.D.Ga.1971) the Court held that interstate commerce in the Atlanta, Georgia real estate business was sufficiently affected to confer federal jurisdiction of a government price-fixing suit under the following circumstances: (1) members of the defendant realtor's association often solicited the business of out-of-state persons; (2) in making such contacts, the realtors caused documents to move between Georgia and other states; (3) people moving to Atlanta from out-of-state utilized the members' services; and (4) the member realtors often assisted purchasers in securing financing, insurance and provided other services necessary to real estate transactions in Atlanta, by virtue of which, substantial amounts of those services moved into Atlanta from out-of-state.

■ In the present case, plaintiffs allege similar involvement of interstate commerce and more. Therefore, it must be concluded that the interstate commerce in the Crystal Lake real estate business is sufficiently affected so as to constitutionally justify the exercise of federal jurisdiction in this case. *See also* United States v. Metro MLS, Inc., No. 210–73–N (E.D.Va. 9–19–73) (unreported decision).

Notwithstanding the *Atlanta Real Estate Board* case, the question presented here is a close one, for two other district courts have reached a contrary conclusion under facts similar to those here. In Marston v. Ann Arbor Property Managers Association, 302 F.Supp 1276 (E. D.Mich.1969), aff'd 422 F.2d 836 (6th Cir. 1970), cert. denied, 399 U.S. 929, 90 S.Ct. 2244, 26 L.Ed.2d 796, university students brought a class action under the Sherman Act to restrain the defendants from fixing apartment rental rates and controlling the supply of new apartments in the market. The Court dismissed the suit for lack of subject-matter jurisdiction because the facts that out-of-state students rented the apartments and materials from interstate commerce were used to construct apartment buildings in the relevant market were not sufficient allegations to establish that defendants had a direct and substantial effect on interstate commerce. In Cotillion Club, Inc. v. Detroit Real Estate Board, 303 F.Supp. 850 (E. D.Mich1964) Negro real estate agents and their association brought suit under, *inter alia,* the Sherman Act against other real estate associations in the Detroit, Michigan area. They alleged the defendants had been conspiring to exclude Negro agents from membership and to prevent Negroes in general from purchasing homes in certain parts of the city. The Court dismissed the case be-

cause the following activities of the defendant associations were deemed local and intrastate and affected interstate commerce only incidentally: (1) members of the defendants received and transmitted information and listing to and from other states; (2) some members of the defendants made and filed applications, reports and other documents for transmittal to Washington, D.C. or other out-of-state offices of federal housing agencies; and (3) some members of the defendants made investigations, appraisals and surveys of federally financed or insured Michigan real estate to be transmitted to other states.

Despite the good sense expressed in the *Marston* and *Cotillion* cases, I must decline to follow them due to the Seventh Circuit's holding in A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Association, *supra.* There the Court held the jurisdictional test was met by the following allegations: (1) defendants interfered with interstate commerce in the scavenger business by restraining the interstate movement of an unidentified amount and type of equipment for plaintiffs' four garbage trucks, (2) defendants threatened boycotts of retail grocery chains operating in interstate commerce to prevent employment of the plaintiffs, and (3) defendants' scavenger business included substantial transportation and sales across state lines because one of the defendants hauled 160 loads of manure from Illinois to Indiana over a period of five years, and on one occasion one of the defendants hauled garbage from Indiana to Illinois. Thus, virtually all of the defendants' activity was local. Acknowledging that the plaintiffs' evidence on the jurisdictional, issue was meager and weak, the Court of Appeals held the above allegations were sufficient to confer jurisdiction upon the federal courts. In view of the holding in *Cherney*, I must conclude that the defendants' activities in this case sufficiently affected interstate commerce in the Crystal Lake real estate business so as to require the exercise of federal jurisdiction. The law of this Circuit now

seems to require the district courts to try antitrust cases on the merits before they may determine whether they even have the jurisdiction or power to do so. Obviously, this makes little sense and adds to the burgeoning caseload of the district courts. Nevertheless, *Cherney* represents the law of this Circuit and it must be followed unless and until it is overruled or reversed. Accordingly, defendants' motion to dismiss for lack of subject-matter jurisdiction must be denied.

**B.   LACK OF PENDENT JURISDICTION  (COUNTS III–V);  IMPROPER JOINDER (COUNTS IV AND V).**

█ Counts III through V purport to allege claims based on state statutory and common law. Federal jurisdiction is predicated upon the doctrine of pendent jurisdiction in that the claim in each Count is alleged to arise from the facts alleged for Counts I and II. Thus, defendants' motion to dismiss Counts III through V for lack of pendent jurisdiction is premised upon the dismissal of Counts I and II. Because the latter two counts are not dismissed, the motion presently under consideration must be denied. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Furthermore, I find that Counts IV and V are properly joined in this action. That the theories of recovery stated therein (interference with contract and trade libel) are different from the preceding antitrust claims does not detract from the fact that they arise from the same alleged activities and schemes attributed to the defendants. Accordingly, the motion to strike Counts IV and V for improper joinder is also denied.

**C.   ADD INDISPENSABLE PARTIES DEFENDANT**

█ Defendants move to join John Jung and John Jung Real Estate as indispensable parties defendants under F.R.Civ.P. 19(a). Apparently Jung and his company operate in the Crystal Lake area, and defendants contend he is the

only member of ALS who was not named as a defendant in this action. In September of 1973, Jung's application for ALS membership was accepted, and on June 10, 1974, he resigned and withdrew from ALS.

Under F.R.Civ.P. 19(a), a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if one of the following three tests is met: (1) in that person's absence complete relief cannot be accorded among those already parties, (2) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may, as a practical matter, impair or impede his ability to protect that interest, or (3) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If that person has not been so joined, the court is to order that he be made a party.

As to the first test, the focus is twofold: (1) whether in the person's absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court, and (2) whether failure to join the absent party would compromise the public interest in avoiding repeated lawsuits on essentially the same subject matter. 1966 Advisory Committee Notes on Amended Rule 19(a). *See also* 3A Moore's Federal Practice Par. 19.-07–1(1). There is no indication in the facts of this case that, if plaintiffs are found to be entitled to recover from the defendants, complete relief could not be granted in the absence of Jung and his company. Furthermore, plaintiffs assert in their briefs that they "have no quarrel with Jung and do not desire his presence in this lawsuit as a defendant." Thus, there is no indication that the public interest in preventing repetitive lawsuits would be compromised if Jung is not joined. Accordingly, it is concluded that under the first test in Rule 19(a), Jung and his company need not be joined as parties defendant to this lawsuit.

The second test is designed to protect the interests of the absent party. 3A Moore's Federal Practice Par. 19.07–1(2). In order to require the Court to join an absent party, it must first be shown that he claims an interest in the subject of the action. The possibility that Jung had an interest in protecting the advantages of membership in ALS was eliminated when he resigned from the organization. Furthermore, although Jung has known of the pendency of this action and has had the opportunity to assert a personal interest in its outcome, he has remained silent. Accordingly, under the second test in Rule 19(a), Jung and his company need not be joined as parties defendant to the present case.

The third test is designed to protect the interests of those who are already parties, and with whom the absent party allegedly should be joined. *See* 3A Moore's Federal Practice Par. 19.07–1(2). Again, the absent party must claim an interest in the subject matter of the lawsuit; and such claim must create the possibility that defendants will have conflicting obligations to the plaintiffs and to the absent party. That this is impossible in the present case is clear from the fact that Jung no longer is a member of ALS. Neither does he claim an interest in ALS nor does ALS have any continuing obligation to him. Accordingly, under the third test in Rule 19(a), Jung and his company need not be joined as parties defendants to the present case.

D.  LACK OF PERSONAL JURISDICTION; FAILURE TO STATE A CLAIM; STAY PROCEEDINGS.

█ As to their motion to dismiss for lack of personal jurisdiction, the defendants have presented the court with nei-

ther the underlying facts nor a brief in support thereof. Accordingly, that motion is deemed to have been waived. As to the motions to dismiss for failure to state a claim and to stay the proceedings pending arbitration, no briefs in support have been filed by defendants. Accordingly, those motions are deemed to have been waived also.

However, defendants are given leave to renew the above motions, if they so choose, within 20 days of the date of this opinion.

### III

In summary, all defense motions heretofore made are denied; but defendants are given leave to renew within 20 days of this date the following motions: to dismiss for lack of personal jurisdiction, to dismiss for failure to state a claim, and to stay the proceedings pending arbitration.