## DIVERSIFIED BROKERAGE SERVICES, INC., et al., Appellants,

### v.

## The GREATER DES MOINES BOARD OF REALTORS et al., Appellees.

### No. 74–1632.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1975.

Decided Aug. 20, 1975.

Rehearing and Rehearing En Banc Denied Oct. 3, 1975.

**1344**

Dan L. Johnston, New York City, for appellants.

Robert E. Dreher, Des Moines, Iowa, for appellees.

Paul C. Sprenger, Eric L. Olson and Robert L. Shutes, Johnson & Sands, Minneapolis, Minn., for amici curiae.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

Plaintiffs, Diversified Brokerage Services, Inc., and several of its officers, claim that the defendants, the Greater Des Moines Board of Realtors (Board) and its member brokers, refused to admit them to the Board and that this action violates § 1 of the Sherman Act, 15 U.S.C. § 1 (1970), and § 4 of the Clayton Act, 15 U.S.C. § 15 (1970).[1] Pri-

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. We discuss only the Sherman Act in this case. The Supreme Court has recently held that the interstate commerce provisions of the

Clayton Act are more restrictive than those of the Sherman Act. *United States v. American Building Maintenance Industries*, 422 U.S. 271, 273–83, 95 S.Ct. 2150, 2153–58, 45 L.Ed.2d 177 (1975); *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 193–99, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

or to trial on the merits the district court dismissed the action on jurisdictional grounds, ruling that the evidence "fails to establish that the activities of the defendants complained of by the plaintiffs directly or substantially affected interstate commerce." [Civil No. 10–237–c–1 (S.D.Ia. June 21, 1974) (unreported).] On the record made by the plaintiffs in this case we agree with the district court and affirm the dismissal.

The Greater Des Moines Board of Realtors operates a multiple listing service which gives its members information concerning real estate listed for sale in the Greater Des Moines area by any of its members. The Board maintains these listings for the exclusive use of its members.

Two of Diversified's officers applied for membership with the Board in 1968 and again in 1969, but the Board refused their applications on both occasions.[2] The plaintiffs maintain that the activities of the defendant-Board and its members in denying plaintiffs admittance to the Board constituted a "Bottle-Neck Boycott" or a "Concerted Refusal to Trade" and were therefore a *per se* violation of the Sherman Act. *See Klors, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *Fashion Originator's Guild v. F.T.C.,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941).

Plaintiffs seek to satisfy the interstate commerce requirements of the Sherman Act by showing that the defendants' brokerage services are interstate in character. As appellants conceded in their brief and at oral argument, they have made no effort to present evidence that defendants' intrastate activities *substantially affect* interstate commerce and therefore come within the purview of the Sherman Act even though they are not interstate in character. *See, e. g., Burke v. Ford,* 389 U.S. 320, 321, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967); *Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 511 F.2d 678, 681 (4th Cir. 1975), *petition for cert. filed,* 43 U.S.L.W. 3661 (U.S. May 19, 1975); *Greenville Publishing Co. v. Daily Reflector, Inc.,* 496 F.2d 391, 395 (4th Cir. 1974); *United States v. Bensinger Co.,* 430 F.2d 584, 588 (8th Cir. 1970).

During each of the three years in which plaintiffs were excluded from the Board (1968, 1969, 1970) defendants engaged in about 3,000 sales of properties. The sales of these properties, primarily residential but including some commercial and income-producing properties, amounted to an average dollar volume per year of approximately $58,000,000. In each of these years approximately one-third of the sales constituted multiple listing transactions in which two members in the listing service had participated.

During the three years that this case remained pending in the district court, the plaintiffs introduced evidence showing that in a survey made of 16 percent of the listings on file with the Board's multiple listing service five real estate transactions involved persons residing outside Iowa. In addition, several other listing cards indicated that the prospective sellers intended to move out-of-state.

Plaintiffs neither produced further evidence to establish the interstate character of the brokerage services nor offered proof of further details concerning any transactions in which the five out-of-state persons participated. Thus, this record presents the sole question whether evidence that five out-of-state persons were parties to real estate transactions in the Greater Des Moines area puts those transactions and the underlying brokerage services in interstate commerce within the meaning of the Sherman Act.

■ It is beyond dispute that the movement of goods in interstate com-

**2.** Plaintiffs initiated this lawsuit March 24, 1971, and one and one-half months later, on May 10, 1971, they were admitted to the Board. The plaintiffs claim they suffered loss of income between October 5, 1968 (the date of their initial application) and May 10, 1971.

merce to an essentially intrastate business may satisfy the interstate commerce requirements of the Sherman Act. *Burke v. Ford, supra,* 389 U.S. at 321–22, 88 S.Ct. 443, 19 L.Ed.2d 554; *United States v. Employing Lathers Ass'n,* 347 U.S. 198, 74 S.Ct. 455, 98 L.Ed. 627 (1954); *United States v. Employing Plasterers Ass'n,* 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954). Also, where, as alleged here, a *per se* violation exists, it is the fact that some goods or services move in interstate commerce that is important, not the amount or quantity of those goods or services. *United States v. Bensinger Co., supra,* 430 F.2d at 588–89; *Las Vegas Merchant Plumbers Ass'n v. United States,* 210 F.2d 732, 739–40 (9th Cir. 1954).

In *United States v. Yellow Cab Co.,* 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), the Supreme Court faced, among other issues, contentions by the Government that the defendant cab companies conspired to limit the number of cab licenses within the City of Chicago. The Government claimed that the Sherman Act's interstate commerce requirement could be satisfied by showing that many interstate travelers began and/or ended their journeys in Chicago and used the local cab service as a part of these interstate journeys. The Court ruled that for purposes of the Sherman Act the interstate journey, in a practical sense, either began or ended at the railroad station and that the cab trip did not become an integral part of the stream of interstate commerce so as to bring the cab companies' conduct within the purview of the Sherman Act. *Id.* at 230–33, 67 S.Ct. 1560, 91 L.Ed. 2010.

Following the rationale in *Yellow Cab,* the cases uniformly hold that the mere movement of individuals from one state to another in order to utilize particular services does not transform those services into interstate services within the meaning of the Sherman Act. *See, e. g., Hospital Bldg. Co. v. Trustees for Rex Hosp., supra,* 511 F.2d at 682–83; *Lieberthal v. North Country Lanes, Inc.,* 332 F.2d 269, 271–72 (2d Cir. 1964); *Ev-* *anston Cab Co. v. City of Chicago,* 325 F.2d 907, 909–13 (7th Cir. 1963), *cert. denied,* 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964); *Elizabeth Hosp., Inc. v. Richardson,* 269 F.2d 167, 170–71 (8th Cir. 1959); *Spears Free Clinic and Hosp. v. Cleere,* 197 F.2d 125, 126–27 (10th Cir. 1952); *Hotel Phillips, Inc. v. Journeyman Barbers,* 195 F.Supp. 664, 667–69 (W.D. Mo.1961), *aff'd,* 301 F.2d 443 (8th Cir. 1962). *Cf. Doctors, Inc. v. Blue Cross of Greater Philadelphia,* 490 F.2d 48, 50–51 (3d Cir. 1973).

In *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the Court addressed the interstate commerce issue under the Sherman Act with respect to legal fees charged for title examinations on real estate transactions. The Court determined the underlying real estate transactions to be frequently interstate in nature since,

[a]s the District Court found, "a significant portion of funds furnished for the purchasing of homes in Fairfax County comes from without the State of Virginia," and "significant amounts of loans on Fairfax County Real Estate are guaranteed by the United States Veterans Administration and Department of Housing and Urban Development both headquartered in the District of Columbia." [*Id.* at 2011 (footnote omitted).]

The Court further ruled that title examinations were an integral part of the interstate real estate transactions and noted the "substantial volume of commerce involved." [*Id.* at 2012 (footnote omitted).]

In the instant case, the plaintiffs offered no evidence such as that in *Goldfarb* that a "significant portion" (or indeed *any*) of the funds underlying these real estate transactions came from outside Iowa. Whereas in *Goldfarb* the federal government had guaranteed many of the loans made in Virginia, the plaintiffs in this case produced no evidence showing any guarantee of these loans by an out-of-state agency. . Furthermore, plaintiffs introduced no evidence of any other interstate commercial aspect to

these transactions, such as interstate advertising.

Thus, on this record, the most that is shown by plaintiffs is some interstate movement of individuals. That is not enough to establish jurisdiction in this case.

 We emphasize the limited nature of our holding. Services affecting real estate, such as brokerage services, may, depending upon the evidence presented, either constitute interstate activities or have no nexus with interstate commerce and thus be beyond the reach of the Sherman Act. *See Goldfarb v. Virginia State Bar, supra,* 95 S.Ct. at 2012. In the instant case, plaintiffs presented extremely limited evidence and failed to show any interstate character to these real estate transactions. Additionally, plaintiffs chose not to attempt to show that the intrastate activities of defendants placed any substantial burden on interstate commerce. Finally, plaintiffs conceded in district court that the substantive and jurisdictional issues were not so intertwined as to preclude a jurisdictional ruling prior to trial on the merits.[3]

On the record before us, appellants demonstrate no error. Accordingly, we affirm.

[3] Subsequent to the publication of *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), appellants requested, among other things, a remand in this case to allow them to present further evidence on the interstate aspect of the defendants' brokerage services. We decline the suggestion. The record shows that appellants were provided with a full and fair opportunity to present evidence relating to jurisdiction.

Appellants filed their complaint March 24, 1971, and dismissal followed more than three years later. Appellants initially requested a jurisdictional ruling on December 22, 1972, when they sought a ruling that the complaint stated a cause of action for a *per se* violation of the Sherman Act. Although the district court eventually denied this motion, the defendants filed, on November 28, 1973, a motion to dismiss for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b). On February 13, 1974, the court reserved its ruling on the motion but set a pre-trial conference at which the plaintiffs were to reveal all of their evidence that they expected to rely on to satisfy the interstate commerce requirements of the Sherman Act. At the pre-trial conference on April 19, 1974, the plaintiffs presented their affidavit, discussed earlier in our opinion, reciting that five real estate transactions had involved buyers from out-of-state and that several prospective sellers intended to move out-of-state.

Under these circumstances, where appellants were given ample opportunity to present evidence on the interstate nexus and afforded a full opportunity for discovery, we do not believe it would be appropriate for us to now remand this case to the district court for further proceedings.