UNITED STATES of America

v.

GREATER SYRACUSE BOARD OF RE-
ALTORS, INC., Gallinger Real Estate,
Inc., Eagan Real Estate, Inc., A. Menter
Real Estate, Inc., Clark Real Estate
Onondaga, Inc., Dewitt Real Estate Inc.,
Blatchford Realty Co., Inc., Longley-
Jones Associates, Inc., L. D. Marshall
Real Estate, Inc., Olson-Peck, Inc., John
M. Gallinger, Thomas E. Teelin, Fred E.
Woods, John M. Peiffer, Jr., and Walter
J. Hansen, Jr., Defendants.

No. 77–CR–57.

United States District Court,
N. D. New York.

April 19, 1978.

Melvin Lublinski, New York City, U.S. Dept. of Justice, of counsel, for United States.

Paul R. Shanahan, Syracuse, N.Y., and Melvin & Melvin, Syracuse, N.Y., Charles H. Thompson, Syracuse, N.Y., of counsel, for Greater Syracuse Bd. of Realtors, Inc.

Lombardi, Devorsetz, Stinziano & Smith, Syracuse, N.Y., Eric T. Dadd, Syracuse, N.Y., of counsel, for Gallinger Real Estate, Inc. and John M. Gallinger.

Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N.Y., William L. Allen, Jr., Syracuse, N.Y., of counsel, for Eagan Real Estate, Inc.

Ali, Gerber, Pappas & Cox, Syracuse, N.Y., Edward F. Gerber, Syracuse, N.Y., of counsel, for A. Menter Real Estate, Inc.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N.Y., George R. Wolff, Syracuse, N.Y., of counsel, for Clark Real Estate Onondaga, Inc.

Langan, Grossman, Kinney & Dwyer, Syracuse, N.Y., Richard D. Grossman, Syracuse, N.Y., of counsel, for Dewitt Real Estate Inc.

Bruce O. Jacobs, Syracuse, N.Y., for Blatchford Realty Co., Inc.

Sugarman, Wallace, Manheim & Schoenwald, Alan J. Goldberg, Syracuse, N.Y., of counsel, for Longley-Jones Associates, Inc.

Edmund H. Jeschke, Syracuse, N.Y., for L. D. Marshall Real Estate, Inc.

Bond, Schoeneck & King, Syracuse, N.Y., Francis E. Maloney, Jr., Syracuse, N.Y., of counsel, for Olson-Peck, Inc.

Hoffmann, Hubert & Hoffmann, Syracuse, N.Y., Wilfred E. Hoffmann, Syracuse, N.Y., of counsel, for Thomas E. Teelin.

John E. Shaffer, Syracuse, N.Y., for Fred E. Woods.

Robert W. Hartnett, Syracuse, N.Y., for John M. Peiffer, Jr.

O'Hara, O'Hara & Vars, George H. Lowe, Liverpool, N.Y., of counsel, for Walter J. Hansen, Jr.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is a criminal antitrust action in which defendants are charged with conspiring to fix, raise, maintain, and stabilize commissions charged for services rendered in connection with the sale of residential real estate in Onondaga County, New York, in violation of § 1 of the Sherman Act. 15 U.S.C. § 1. Presently before the Court are various motions made by defendants to dismiss the Indictment and for certain other forms of relief.

1. All defendants move to dismiss the Indictment for lack of federal subject matter jurisdiction, while several defendants also move to

### I.

Defendants move to dismiss the Indictment on the grounds that it fails to allege federal subject matter jurisdiction and fails to charge an offense.[1] Defendants contend that the allegations of the Indictment are not sufficient to satisfy the interstate commerce requirement of the Sherman Act.

### A.

■ Conduct is prohibited by § 1 of the Sherman Act only if it is "in restraint of trade or commerce among the several States." 15 U.S.C. § 1. This requirement is both a jurisdictional basis and a substantive element of the offense. *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 890–91 (3d Cir. 1977).

■ Congress, in passing the Sherman Act, intended to exercise the fullest extent of its constitutional power to regulate commerce. *United States v. American Building Maintenance Industries*, 422 U.S. 271, 278, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975); *United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 298, 65 S.Ct. 661, 89 L.Ed. 951 (1945); *United States v. South-Eastern Underwriters Association*, 322 U.S. 533, 558, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); *Taxi Weekly, Inc. v. Metropolitan Taxicab Board of Trade, Inc.*, 539 F.2d 907, 910 (2d Cir. 1976). Hence, defendants' conduct is within the reach of the Act if Congress has the power to proscribe that conduct under the Commerce Clause. *Hudson Valley Asbestos Corporation v. Tougher Heating & Plumbing Co., Inc.*, 510 F.2d 1140, 1142–43 n. 1 (2d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975); *Rasmussen v. American Dairy Association*, 472 F.2d 517, 521 (9th Cir. 1972), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973). As the concept of Congressional power to regulate commerce has expanded over the years, so has the scope of the Sherman Act.

dismiss the Indictment for failure to state an offense under the Sherman Act.

*Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743 n. 2, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 201–02, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

 The interstate commerce requirement of the Sherman Act will be established if either of two tests is satisfied: (1) the "in commerce" test or (2) the "affecting commerce" test. Under the former test, the alleged anticompetitive conduct must occur within the flow of interstate commerce, while under the latter test, the conduct may occur wholly on an intrastate level but must substantially affect interstate commerce. *Burke v. Ford*, 389 U.S. 320, 321, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967); *Greenville Publishing Company, Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 395 (4th Cir. 1974); *Las Vegas Merchant Plumbers Association v. United States*, 210 F.2d 732, 739 n. 3 (9th Cir.), *cert. denied*, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954). While inconsequential, remote, or fortuitous effects are insufficient to establish jurisdiction, *Lieberthal v. North Country Lanes, Inc.*, 332 F.2d 269, 272 (2d Cir. 1964), the effects do not have to be the result of conduct purposely directed toward interstate commerce. *Hospital Building Co. v. Trustees of Rex Hospital, supra*, 425 U.S. at 744, 96 S.Ct. 1848.

> The source of the restraint may be intrastate, as the making of a contract or combination usually is; the application of the restraint may be intrastate, as it often is; but neither matters if the necessary effect is to stifle or restrain commerce among the states. If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze.

*United States v. Women's Sportswear Manufacturers Association*, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805 (1949). *See also Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 234–36, 68 S.Ct. 996, 92 L.Ed. 1328 (1948).

 Under both the "in commerce" and "affecting commerce" tests, there must be a nexus between the complained of conduct and the interstate commerce involved.

*Hospital Building Co. v. Trustees of Rex Hospital, supra*, 425 U.S. at 742 n. 1, 96 S.Ct. 1848; *Boddicker v. Arizona State Dental Association*, 549 F.2d 626, 629 (9th Cir. 1977). "The test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business." *Page v. Work*, 290 F.2d 323, 330 (9th Cir.), *cert. denied*, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961).

 There is not a bright line dividing cases in which the interstate commerce requirement of the Sherman Act is satisfied from those in which this requirement is not met. *Rasmussen v. American Dairy Association, supra*, 472 F.2d at 526. The existence of Sherman Act jurisdiction must be determined on a case-by-case basis by an evaluation of the relevant economic facts. *J. P. Mascaro & Sons, Inc. v. William J. O'Hara, Inc.*, 565 F.2d 264, 269 (3d Cir. 1977); *United States v. Finis P. Ernest, Inc.*, 509 F.2d 1256, 1258 (7th Cir.), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975); *Doctors, Inc. v. Blue Cross of Greater Philadelphia*, 490 F.2d 48, 51 (3d Cir. 1973).

### B.

A number of courts have considered the applicability of the Sherman Act to real estate transactions. In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the Supreme Court considered the Act's interstate commerce requirement as it applies to a minimum fee schedule for services rendered by attorneys in performing title examinations in connection with the financing of real estate purchases. Since a significant portion of the funds furnished to finance home purchases came from out-of-state and since many of the loans were guaranteed by agencies of the federal government located out-of-state, the Court regarded the underlying real estate transactions as being frequently interstate in nature. The Court found that a title examination, which could legally be performed in the State of Virginia only by a member of the Virginia State Bar, was an

integral part of these interstate transactions, because lenders required, as a condition of making a loan, that title to the property in question be examined. The Court held,

Given the substantial volume of commerce involved, and the inseparability of this particular legal service from the interstate aspects of real estate transactions, we conclude that interstate commerce has been sufficiently affected.

421 U.S. at 785, 95 S.Ct. at 2012 (footnote omitted).[2]

The lower court cases considering the applicability of the Sherman Act to real estate transactions have reached divergent results. In *Marston v. Ann Arbor Property Managers (Management) Association,* 302 F.Supp. 1276 (E.D.Mich.1969), *aff'd,* 422 F.2d 836 (6th Cir.), *cert. denied,* 399 U.S. 929, 90 S.Ct. 2244, 26 L.Ed.2d 796 (1970), students at the University of Michigan brought a class action, alleging that defendants violated § 1 of the Sherman Act by conspiring to fix apartment rental rates and by attempting to control the supply of new apartments in the market. The facts that out-of-state students rented apartments and that material from out-of-state was used in the construction of the apartment buildings were found by the court to be insufficient to establish jurisdiction. In *Cotillion Club, Inc. v. Detroit Real Estate Board,* 303 F.Supp. 850 (E.D.Mich.1964), plaintiffs alleged that defendants violated the Sherman Act by conspiring to prevent Blacks from purchasing homes in certain areas and by conspiring to exclude Black real estate brokers from membership in the defendant associations. Finding that the alleged restraints were purely local in nature and had only an incidental impact on interstate commerce, the court dismissed the Complaint for lack of jurisdiction.[3]

In both *Diversified Brokerage Services, Inc. v. Greater Des Moines Board of Realtors,* 521 F.2d 1343 (8th Cir. 1975) and *Bryan v. Stillwater Board of Realtors,* No. 77–1111 (10th Cir. July 26, 1977), the courts found that the interstate commerce requirement of the Sherman Act was not satisfied in cases where the plaintiffs alleged that they were illegally excluded from membership in the defendant board of realtors. In *Diversified Brokerage,* the only evidence offered by plaintiffs on the interstate commerce issue was that five real estate transactions involved persons residing outside the state. The court found that this evidence was insufficient to show that defendants' activities were in interstate commerce. In *Bryan,* the Complaint set forth a number of ways in which defendants were allegedly involved with interstate commerce, but the court held that there was no logical nexus between the interstate commerce allegations and defendants' alleged anticompetitive conduct.

In *McLain v. Real Estate Board of New Orleans, Inc.,* 432 F.Supp. 982 (E.D.La. 1977), plaintiffs brought a class action, alleging that defendants conspired to fix the commissions charged for brokerage services. The court stated that the requisite nexus between the complained of conduct and interstate commerce was not established by the mere interstate movement of prospective buyers or sellers or by defendants' participation in a national relocation service through which defendants received clients, referred by out-of-state brokers, and through which defendants referred individuals leaving the area to brokers in other states. Purporting to rely upon *Goldfarb v. Virginia State Bar, supra,* the court indicated that jurisdiction would

---

**2.** The Court in *Goldfarb* observed that some legal services might involve interstate commerce in a different manner, while certain other legal services might be beyond the reach of the Sherman Act. 421 U.S. at 785–86, 95 S.Ct. 2004.

**3.** The court in *Cotillion* said that plaintiffs failed to show a relationship between the complained of conduct and defendants' alleged in-

terstate activities—the receipt and transmittal of information and listings to and from other states; the making and filing of applications, reports, and other documents to federal agencies with offices out-of-state; and the making of investigations, appraisals, and surveys on federally financed or insured real estate to be sent to other states. 303 F.Supp. at 853.

be established only if brokers in the area played an essential or integral role in securing out-of-state financing and insurance. Finding that the evidence submitted by plaintiffs failed to satisfy this criteria, the court dismissed the action for lack of jurisdiction.

A number of other courts have held that, at least in certain circumstances, real estate transactions are within the ambit of the Sherman Act. In *Mazur v. Behrens*, 1974–1 Trade Cases ¶ 75,070 (N.D.Ill.1972), plaintiffs filed a class action, charging defendants with a conspiracy to fix real estate brokerage commissions in violation of the antitrust laws. The court found that defendants were engaged in interstate commerce on the basis of evidence showing that some defendants represented out-of-state buyers or sellers in more than 40 percent of their transactions, and that many defendants advertised and solicited business from out-of-state buyers or sellers.

In *United States v. Atlanta Real Estate Board*, 1972 Trade Cases ¶ 73,825 (N.D.Ga. 1971), the Complaint, which charged illegal price-fixing, contained various allegations concerning the involvement of the defendant real estate board with interstate commerce. The court denied defendant's motion to dismiss. It concluded that the jurisdictional issues were intertwined with questions going to the merits, and, therefore, indicated that the interstate commerce question would have to be decided at trial. For similar reasons, the courts in *Gateway Associates, Inc. v. Essex-Costello, Inc.*, 380 F.Supp. 1089 (N.D.Ill.1974) and *United States v. Metro MLS, Inc.*, 1974–2 Trade Cases ¶ 75,311 (E.D.Va.1973) denied motions to dismiss.

In *Oglesby and Barclift, Inc. v. Metro MLS, Inc.*, 1976–2 Trade Cases ¶ 61,064 (E.D.Va.1976), an association of real estate brokers was alleged to have engaged in price-fixing and other anticompetitive conduct. The court decided, after trial, that the activities of the defendant were within the flow of interstate commerce and had a substantial effect upon such commerce. The court based this conclusion upon the following facts: significant amounts of funds for mortgage loans came from out-of-state; 25 to 30 percent of the financing was insured by the VA or FHA; members of the defendant advertised in newspapers with wide interstate circulation; members of the defendant belonged to national referral organizations; and 20 to 25 percent of the real estate purchasers or sellers were members of the armed forces moving into or from the state.

Besides the present case, the only criminal antitrust action which the Government has brought against real estate brokers is *United States v. Jack Foley Realty, Inc.*, 1977–2 Trade Cases ¶ 61,678 (D.Md.1977). The defendants in *Foley* were charged with conspiring to fix commission rates for the sale of residential real estate in Montgomery County, Maryland, which is part of the Washington, D.C. metropolitan area. The Indictment alleged that a substantial number of persons using defendants' services were persons moving to or from places outside the state; that defendants belonged to nationwide referral services; that defendants advertised their listings in newspapers with interstate circulation; and that defendants assisted purchasers in securing financing, much of which came from out-of-state sources and a significant portion of which was guaranteed by agencies of the federal government. The court denied defendants' motion to dismiss the Indictment, holding that defendants' activities, when considered in the aggregate, had a substantial effect upon interstate commerce.

### C.

In the present case, it is unnecessary to decide whether defendants' conduct is in the flow of interstate commerce since the Court is of the opinion that, if the allegations of the Indictment are proven, the interstate commerce requirement of the Sherman Act will be established under the affecting commerce test.

The effect upon interstate commerce must be viewed in terms of practical economics. *Hospital Building Co. v. Trustees of Rex Hospital, supra; Goldfarb v.*

*Virginia State Bar, supra; Burke v. Ford, supra.* Thus, the Court must make a practical economic judgment as to whether the complained of conduct substantially affects interstate commerce. *Doctors, Inc. v. Blue Cross of Greater Philadelphia, supra,* 490 F.2d at 51; *Rasmussen v. American Dairy Association, supra,* 472 F.2d at 523; *United States v. Jack Foley Realty, Inc., supra,* 1977–2 Trade Cases at 72,788. For purposes of making this determination, on a motion to dismiss, the allegations of the Indictment are presumed to be true. *United States v. Frankfort Distilleries, Inc.,* 324 U.S. 293, 296, 65 S.Ct. 661, 89 L.Ed. 951 (1945); *United States v. South Florida Asphalt Company,* 329 F.2d 860, 865 (5th Cir.), *cert. denied sub nom. R. H. Wright, Inc. v. United States,* 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964).

■ The Indictment in this case alleges that defendants frequently assist home purchasers in obtaining financing, a significant portion of which is guaranteed by the United States Veterans Administration and the Department of Housing and Urban Development, both headquartered in Washington, D.C. The Indictment further alleges that defendants assist substantial numbers of corporate transferees in moving into or out of New York State.

According to the Indictment, many of the defendants are associated with referral agencies, a number of which are located outside the State of New York. Through these associations, defendants obtain clients moving into New York State who are referred by out-of-state brokers. Defendants, likewise, refer individuals leaving Onondaga County to brokers in other states. If a defendant completes a sale to an out-of-state referral, he allegedly forwards a portion of the commission earned to the referral agency and referring real estate broker. Similarly, if an out-of-state broker makes a sale to an individual referred by one of the defendants, he allegedly forwards a portion of the commission earned to the defendant. The Indictment also charges that relocation services, some of which are located outside New York State, frequently list, for sale with defendants, homes which the relocation services have purchased from corporate employees being transferred to a new community.

■ The amount of money moving in interstate commerce as a result of defendants' activities in connection with referral services and relocation services is alleged to be substantial. Furthermore, significant numbers of contracts and other legal documents, as well as significant numbers of people, monies, and mortgages, are alleged to move in interstate commerce as a result of defendants' sale of residential real estate in Onondaga County. The Indictment charges that defendants combined and conspired in unreasonable restraint of this interstate trade and commerce. On the basis of these allegations, the Court concludes that the Indictment adequately charges that defendants' alleged anticompetitive conduct substantially affects interstate commerce.[4]

---

4. Defendants contend that the Indictment is defective because it fails to use the specific language that defendants' conduct substantially "affects" interstate commerce or has a substantial "effect" upon such commerce. In evaluating the sufficiency of an Indictment, common sense and reason prevail over technicalities. *Robbins v. United States,* 476 F.2d 26, 30 (10th Cir. 1973); *Parsons v. United States,* 189 F.2d 252, 253 (5th Cir. 1951). The Court believes that the Indictment adequately charges the requisite effect upon interstate commerce. It is alleged in ¶ 14 that "the defendants and co-conspirators engaged in a combination and conspiracy in unreasonable restraint of the aforesaid trade and commerce . . . ."

In *United States v. Employing Plasterers Association,* 347 U.S. 186, 188, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954), the Supreme Court stated: And the [district] court held that there was no allegation of fact which showed that these powerful local restraints had a sufficiently adverse effect on the flow of plastering materials into Illinois. At this point we disagree. The complaint plainly charged several times that the effect of all these local restraints was to restrain interstate commerce. Whether these charges be called "allegations of fact" or "mere conclusions of the pleader," we hold that they must be taken into account in deciding whether the Government is entitled to have its case tried.

■ The requisite effect upon interstate commerce, in this case, is created by the combined impact of the challenged activity upon the various elements of interstate commerce set forth in the Indictment. Nonetheless, the Court believes that one factor is particularly significant in establishing a sufficiently substantial effect upon interstate commerce—the interstate movement of a substantial amount of money in the form of referral commissions and relocation service commissions. The Court feels that the complained of conduct necessarily burdens the flow of funds (1) from the defendants to out-of-state referral agencies and referring real estate brokers and (2) from out-of-state relocation services to the defendants.[5] The almost inevitable effect of a conspiracy to fix commission rates on the sale of residential real estate in Onondaga County is to decrease competition among the participants and increase the price of brokers' services. It is a matter of economic reality that the increased price of brokers' services will result in decreased use of such services in buying or selling homes. The decreased use of brokers' services will reduce the interstate flow of relocation service commissions and referral commissions.

If the commissions on the sale of residential real estate in Onondaga County are set at an artificial and noncompetitive level, fewer out-of-state relocation services will list, for resale with defendants, the real estate they have purchased from corporate transferees. If this happens, some potential sales would not be made by defendants, and the amount of relocation service commissions moving in interstate commerce would decrease.

Likewise, fewer prospective purchasers, referred by out-of-state brokers, will use the services of an Onondaga County broker to purchase a home if the commission rates charged by local brokers are artificially set. Defendants point out that a real estate broker is the agent of the seller, and so the seller, rather than the purchaser, would be required to pay the broker's commission.[6] Nevertheless, it is likely that the seller would increase the price he is asking for his home in order to pay the broker's commission. The increased price of homes would result in fewer sales by brokers to out-of-state referrals. If, on the other hand, it is customary for sellers to not increase the asking price for their homes and, instead, bear the commission cost themselves (which is what some of the defendants contend is the case), an increase in commission rates would result in fewer home owners being willing to list their homes for sale with defendants. The out-of-state referral would thus be less likely to find a home to suit his needs from a real estate broker in Onondaga County and might then not purchase a home or might purchase one in a private transaction without a broker. In either event, a referral commission would not be earned and would not move in interstate commerce.

The Supreme Court's decision in *Goldfarb v. Virginia State Bar, supra,* while not identical to the present case, provides support for this Court's conclusion concerning the effect of the restraint in question upon the flow of referral commissions and relocation service commissions. In *Goldfarb,* an attorney's services were required for the performance of a title examination which was a prerequisite to obtaining real estate fi-

---

*See also United States v. South Florida Asphalt Company, supra; United States v. Chrysler Corporation Parts Wholesalers,* 180 F.2d 557 (9th Cir. 1950); *United States v. Brighton Building & Maintenance Co.,* 435 F.Supp. 222 (N.D.Ill.1977).

5. On the other hand, the complained of conduct has no effect upon the flow of funds from out-of-state brokers to the defendants since such funds move in interstate commerce only when a sale of real estate is completed outside New York State by an out-of-state broker.

6. While a broker must normally look to the seller for the payment of his commission, the purchaser will be liable for the broker's commission if he employed the broker and agreed, expressly or impliedly, to pay compensation for the services rendered. *Grossman v. Herman,* 266 N.Y. 249, 253, 194 N.E. 694, 695–96 (1935); *Lee v. Woodard,* 259 N.Y. 149, 150, 181 N.E. 81 (1932); *Donato v. Baltrusaitis,* 56 Misc.2d 935, 290 N.Y.S.2d 659, 665 (S.Ct. Queens Co. 1958).

nancing while in the present case, the Indictment does not allege that a real estate broker's services are necessary to complete a real estate transaction or to obtain financing. However, in both cases, the services of an attorney (*Goldfarb*) or a real estate broker (the present case) are necessary for the movement of certain monies in interstate commerce. In *Goldfarb*, the attorney's services in performing a title examination were necessary for the movement of out-of-state financing into Virginia. Likewise, in the present case, the services of a real estate broker are necessary for the movement of referral commissions and relocation service commissions in interstate commerce since such commissions will be generated only if a real estate broker completes a sale in Onondaga County. Hence, a restraint placed upon the sale of residential real estate in Onondaga County will necessarily affect the movement in interstate commerce of referral commissions and relocation service commissions.

The Court believes that the complained of conduct will, to some extent, also affect the movement of people and federally guaranteed mortgages. It is true that the services of a broker are not necessary for the interstate movement of people since a person can begin or end his interstate journey (by buying or selling a home) without the services of a broker. However, the restraint in question will have a certain effect upon the movement of people since the increased cost resulting from the fixing of commission rates will deter some people from using a broker's services, and it may be more difficult for a person, contemplating a move from one state to another, to sell a home or to buy one to suit his needs, without a broker's services. For similar reasons, the restraint in question will have a certain effect upon the movement of federally guaranteed mortgages. The effect upon these movements does not appear to be as great, in a qualitative sense, as the effect upon the movement of referral commissions and relocation service commissions, and the Court doubts if the effect of the restraint upon either of these movements would be sufficient, standing alone, to establish a predicate for Sherman Act jurisdiction.[7] Nonetheless, the effect which defendants' conduct does have upon these movements helps to establish the necessary impact on interstate commerce, when considered along with the greater effect which the restraint in question has upon the interstate movement of referral commissions and relocation service commissions.[8]

It will not be necessary for the Government to prove that the amount of referral commissions or relocation service commissions moving in interstate commerce actually decreased as a result of the alleged anticompetitive conduct of the defendants. Likewise, the Government will not have to prove that fewer federally guaranteed mortgages were granted or that fewer people moved to or from the state.[9] What is

7. Several courts have held that the interstate commerce requirement of the Sherman Act is not satisfied by the mere movement of people across state lines to utilize particular services. *See, e. g., Diversified Brokerage Services, Inc. v. Greater Des Moines Board of Realtors, supra*, 521 F.2d at 1346; *Elizabeth Hospital, Inc. v. Richardson*, 269 F.2d 167, 170–71 (8th Cir.), cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959); *Spears Free Clinic and Hospital For Poor Children v. Cleere*, 197 F.2d 125, 126–27 (10th Cir. 1952). However, other courts, which sustained jurisdiction under the Sherman Act, have regarded the interstate movement of people as a relevant factor when considered along with other factors. *See, e. g., United States v. Jack Foley Realty, Inc., supra; Oglesby and Barclift, Inc. v. Metro MLS, Inc., supra; Mazur v. Behrens, supra.*

8. The Indictment also refers to the interstate movement of contracts and other legal documents. It appears that the contracts and other documents in question are related to the interstate movements already considered. Thus, defendants' conduct will affect the interstate flow of contracts and other documents to the extent that the other interstate movements are affected.

9. Even if the amount of referral commissions, relocation service commissions, federally guaranteed mortgages, and people moving in interstate commerce actually increased during the years covered by the Indictment, this would not show that defendants' conduct does not have an effect upon interstate commerce since, in all likelihood, these interstate movements would have increased even more if the restraint in

important is the nature of the effect which the complained of conduct has upon interstate commerce. Once an effect is shown, it is not necessary to prove that the effect is of a specific magnitude. *Goldfarb v. Virginia State Bar, supra,* 421 U.S. at 785, 95 S.Ct. 2004; *Doctors, Inc. v. Blue Cross of Greater Philadelphia, supra,* 490 F.2d at 53; *Rasmussen v. American Dairy Association, supra,* 472 F.2d at 525.

However, defendants' conduct will have a substantial effect upon interstate commerce only if the amount or volume of interstate commerce affected is substantial. *Goldfarb v. Virginia State Bar, supra,* 421 U.S. at 785, 95 S.Ct. 2004; *United States v. Women's Sportswear Manufacturers Association, supra,* 336 U.S. at 464, 69 S.Ct. 714; *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir. 1977); *Doctors, Inc. v. Blue Cross of Greater Philadelphia, supra,* 490 F.2d at 51. Defendants contend that the amount of commerce actually involved is insignificant, but the allegations of the Indictment, which charge that the amount is substantial, must be regarded as true for purposes of deciding the present motion.

With the possible exception of *McLain v. Real Estate Board of New Orleans, Inc., supra,* those cases which found real estate transactions to be outside the reach of the Sherman Act are distinguishable from the present case. The allegations of interstate involvement made in *Marston v. Ann Arbor Property Managers (Management) Association, supra,* and *Cotillion Club, Inc. v. Detroit Real Estate Board, supra,* are significantly different from those made in the present case. In *Cotillion Club,* plaintiffs relied upon the receipt and transmittal of information and documents in interstate commerce. The extent or substantiality of these activities was not set forth, and unlike the present case, there were not any allegations concerning the interstate flow of commissions or other monies. In *Marston,* the interstate commerce in question consisted of out-of-state students and materials used in the construction of apartment buildings.

In *Diversified Brokerage Services, Inc. v. Greater Des Monies Board of Realtors, supra,* extremely limited evidence was offered to show the interstate character of the real estate transactions. Moreover, plaintiffs relied solely upon the "in commerce" test to establish jurisdiction, and did not attempt to show that defendants' conduct had a substantial effect upon interstate commerce. The court emphasized the limited nature of its holding, and said that,

> Services affecting real estate, such as brokerage services, may, depending upon the evidence presented, either constitute interstate activities or have no nexus with interstate commerce and thus be beyond the reach of the Sherman Act.

521 F.2d at 1347. In *Bryan v. Stillwater Board of Realtors, supra,* the court found that there was no nexus between the complained of conduct—plaintiff's exclusion from membership in the defendant board of realtors—and the interstate commerce allegations, but implied that a different result might be justified where the alleged anticompetitive conduct is price-fixing. *Slip op.* at 9.

On the other hand, the facts in *McLain v. Real Estate Board of New Orleans, Inc., supra,* may be indistinguishable, in principal respects, from those in the present case. However, this Court believes that the court in *McLain* applied a too restrictive jurisdictional approach. In particular, this Court disagrees with the conclusion of the court in *McLain* that there is no nexus between price-fixing of commissions charged for the sale of residential real estate and defendants' participation in national relocation or referral services.

The Court recognizes that prior cases finding real estate brokerage activities to be within the reach of the Sherman Act included additional allegations not present in the case at bar. Allegations of interstate advertising and interstate financing were made in most of the previous cases in which

---

question had not been imposed upon the sale of residential real estate in Onondaga County.

*See Burke v. Ford, supra,* 389 U.S. at 322 n. 2, 88 S.Ct. 443.

courts upheld jurisdiction. This Court does not regard the absence of these factors to be crucial in the context of the present case. The applicability of the Sherman Act is determined by a case-by-case evaluation of the relevant economic facts. The Court must examine the facts which are present in the case before it. The absence of any particular factor is not crucial, provided that the factors which are present are sufficient to establish that defendants' alleged anticompetitive conduct substantially affects interstate commerce. The Court believes that the facts, as alleged in the Indictment in this case, do satisfy this standard.

Accordingly, the Court holds that the Indictment adequately alleges federal subject matter jurisdiction and charges an offense under the Sherman Act.

## II.

Defendants move to dismiss the Indictment on the further ground that insufficient evidence was presented to the Grand Jury concerning federal subject matter jurisdiction. Defendants request that the Court review the Grand Jury minutes to make this determination.

 The Fifth Amendment guarantees that, in federal court, a person will be held to answer for a capital or otherwise infamous crime only on a presentment or Indictment by a Grand Jury, but this provision does not establish any evidentiary standards for Grand Juries to follow. *Costello v. United States*, 350 U.S. 359, 361–62, 76 S.Ct. 406, 100 L.Ed. 397 (1956). It is well established that an Indictment, which is valid on its face and which was returned by a legally constituted and unbiased Grand Jury, is not subject to challenge on the ground that it is based on inadequate or incompetent evidence. *United States v. Calandra*, 414 U.S. 338, 344–45, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Lawn v. United States*, 355 U.S. 339, 349–50, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States, supra; United States v. Guillette*, 547 F.2d 743, 752 (2d Cir. 1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Addington*, 471 F.2d 560, 568 (10th Cir. 1973). The Court in *Costello* stated:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

350 U.S. at 363, 76 S.Ct. at 409 (footnote omitted).

 Therefore, it is unnecessary for the Court to review the Grand Jury minutes to determine the sufficiency of the evidence presented to the Grand Jury.[10]

**10.** Defendants also request that the Court review the instructions given by the prosecutor to the Grand Jury. The Court has been advised by the Government that such instructions were not transcribed. While it is the better procedure to record Grand Jury proceedings, failure to do so does not render invalid an Indictment returned by the Grand Jury. *United States v. Peden*, 472 F.2d 583, 584 (2d Cir. 1973); *United States v. Cramer*, 447 F.2d 210, 213–14 (2d Cir. 1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 680, 30 L.Ed.2d 674 (1972); *United States v. Cianchetti*, 315 F.2d 584, 591 (2d Cir. 1963). Moreover, defendants have failed to make a suffi-cient showing that they have been prejudiced by the failure to transcribe the prosecutors' instructions. The Court observes that while the prosecutors' instructions were not transcribed, apparently the testimony of all witnesses appearing before the Grand Jury was recorded. The testimony of some of the witnesses has already been furnished to defendants in accordance with Fed.R.Crim.P., Rule 16, and presumably the testimony of additional witnesses will be provided at the time of trial in compliance with the Jencks Act. 18 U.S.C. § 3500.

■ In the alternative, defendants request that a pretrial evidentiary hearing be held to decide any unresolved questions of fact concerning the presence of Sherman Act jurisdiction in this case. On a motion to dismiss an Indictment prior to trial, a court may consider only those objections which are "capable of determination without the trial of the general issue." Rule 12(b), Fed.R.Crim.P. *See United States v. Knox*, 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); *United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969). When a pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial. *United States v. Andreas*, 374 F.Supp. 402, 406–07 (D.Minn.1974); *United States v. Callahan*, 300 F.Supp. 519, 522 (S.D.N.Y.1969); *United States v. Fargas*, 267 F.Supp. 452, 455–57 (S.D.N.Y.1967). Moreover, Rule 12 is not intended to authorize "speaking motions" whereby the truth of the allegations of the Indictment are challenged. *United States v. Russell*, 415 F.Supp. 9, 10 (W.D.Texas 1975); *United States v. J.R. Watkins Company*, 16 F.R.D. 229, 234 (D.Minn.1954); 1 C. Wright, *Federal Practice and Procedure* § 194 (1969).

■ The Court is of the opinion that it would not be appropriate to hold a pretrial evidentiary hearing on the question of federal subject matter jurisdiction in this case. Since the interstate commerce requirement of the Sherman Act is a substantive element of the offense as well as a jurisdictional basis, *Mortensen v. First Federal Savings and Loan Association, supra*, 549 F.2d at 890–91, the jurisdictional issue is intermeshed with questions going to the merits. *McBeath v. Inter-American Citizens For Decency Committee*, 374 F.2d 359 (5th Cir. 1967); *United States v. Atlanta Real Estate Board, supra*. Essentially, defendants are seeking to challenge the truth of the interstate commerce allegations contained in the Indictment, and this is a mat-

ter which is more properly determined at trial.

## III.

■ Certain defendants move to dismiss the Indictment on the ground that it is impermissibly vague and indefinite in violation of the Sixth Amendment and Fed.R. Crim.P., Rule 7(c). The Sixth Amendment requires that a defendant be informed of the "nature and cause of the accusation" against him while Rule 7(c) requires that an Indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged." An Indictment must be sufficiently specific to enable the defendants to prepare an adequate defense and avoid the possibility of being placed in double jeopardy. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Rudinsky*, 439 F.2d 1074, 1076 (6th Cir. 1971); *United States v. Tedesco*, 441 F.Supp. 1336, 1339 (M.D.Pa.1977).

The Court believes that the present Indictment adequately alleges the essential elements of a Sherman Act § 1 violation and is sufficiently specific to satisfy the Sixth Amendment and Rule 7(c). The trade and commerce allegedly restrained is described in considerable detail. Moreover, the time, place, terms, and effects of the alleged violation are clearly set forth. The Government's Bill of Particulars provides defendants with additional information concerning the charges.

■ Some defendants move for a dismissal of the Indictment on the additional ground that this Court lacks jurisdiction over the defendants. It is well established that the personal presence of a defendant before a district court gives that court jurisdiction over him. *United States v. Lira*, 515 F.2d 68 (2d Cir.), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975); *United States v. Zammiello*, 432 F.2d 72 (9th Cir. 1970); *United States v. Williams*, 212 F.2d 786 (7th Cir. 1954). All defendants appeared before this Court on May 10, 1977, and entered pleas of not guilty to the In-

dictment. They thereby subjected themselves to the jurisdiction of this Court.[11]

## IV.

Two defendants have made additional motions. Defendant Fred E. Woods requests that the defendants be allowed to examine the Grand Jury minutes or that the Court examine the minutes itself for the purpose of determining whether misconduct by the prosecution took place before the Grand Jury. If such misconduct did take place, defendant Woods asks the Court, in its discretion, to dismiss the Indictment. Defendant Woods' counsel has submitted an affidavit in which he states that he has been informed by a Grand Jury witness that the witness was accused of lying before the Grand Jury and felt badgered by the prosecuting attorneys who were present during his testimony. In addition, the questioners allegedly tried to force this witness to give a yes or no answer to compound questions which assumed facts which the witness felt were incorrect.

■ A strong presumption of regularity is accorded to the findings of a Grand Jury. *United States v. West*, 549 F.2d 545, 554 (8th Cir.), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1977); *United States v. Greenberg*, 204 F.Supp. 400, 402 (S.D.N.Y.1962). This presumption will not necessarily be rebutted even by an uncontroverted affidavit from defendant's counsel concerning the existence of prosecutorial misconduct. *Beatrice Foods Co. v. United States*, 312 F.2d 29, 39 (8th Cir.), *cert. denied*, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963); *United States v. Globe Chemical Co.*, 311 F.Supp. 535, 537 (S.D.Ohio 1969). An Indictment will be dismissed because of the actions of the prosecution only if there is a clear showing of serious misconduct.

*United States v. Riccobene*, 451 F.2d 586 (3d Cir. 1971); *United States v. Bruzgo*, 373 F.2d 383 (3d Cir. 1967).

■ The Court believes that defendant Woods has failed to make a sufficiently strong showing of prosecutorial misconduct to permit the defendants to inspect the Grand Jury minutes or to require the Court to make such an inspection itself.

Defendant Woods also moves to preclude the Government from offering certain evidence at trial on the ground that the Government's Bill of Particulars fails to comply, in certain respects, with this Court's Order of August 23, 1977. This motion is premature. There is no indication in the present record that the Government has failed to comply with this Court's Order of August 23, 1977. If it appears otherwise at the time of trial, a motion to preclude can be made at that time.

■ Finally, defendant Clark Real Estate Onondaga, Inc. moves for the names and addresses of the Grand Jurors who voted for the Indictment so that further motions can be made to dismiss the Indictment based upon objections to the array or lack of legal qualifications of individual jurors. Rule 6(b)(2), Fed.R.Crim.P. This request is unwarranted. Defendant has made no showing that any of the Grand Jurors might not have been legally qualified. If such a showing were made, the Court would examine the Grand Jury voting record *in camera* to determine whether a sufficient number of qualified jurors voted for the Indictment. *Cf. United States v. Countryside Farms, Inc.*, 428 F.Supp. 1150, 1159 (D.Utah 1977). A defendant does have a right to inspect the jury selection records in order to prepare a motion challenging the procedures used in selecting the Grand Jury, 28 U.S.C. § 1867(f); *Test v. United*

---

11. Defendant Greater Syracuse Board of Realtors argues that the Indictment should be dismissed as to the Board for an additional reason. The Board contends that the Government's Bill of Particulars, when read together with the Indictment, establishes that the Board's own activities are not within the flow of interstate commerce and do not substantially affect that commerce. It is unnecessary to determine if this is so, since even if the Board is not directly involved in interstate commerce, its conduct might be within the scope of the Sherman Act if it has participated in a conspiracy that has the requisite impact upon interstate commerce. *Wolfson v. Artisans Savings Bank*, 428 F.Supp. 1315, 1323 (D.Del.1977); *United States v. General Motors Corporation*, 2 F.R.D. 346, 348 (N.D.Ill.1942).

*States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), but such a request has not been made in this case.

Defendants' motions to dismiss the Indictment are denied. Defendants' motions for an examination of the Grand Jury minutes and for a pretrial hearing are also denied. Defendant Woods' motion to preclude the Government from offering certain evidence at trial is denied. Defendant Clark Real Estate's motion for the names and addresses of the Grand Jurors who voted for the Indictment is also denied.

It is so ordered.