**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**GEORGIA WASTE SYSTEMS, INC. and
Raymond E. Dinkle,
Defendants-Appellants.**

No. 83–8188.

United States Court of Appeals,
Eleventh Circuit.

May 14, 1984.

Edward T.M. Garland, Atlanta, Ga., Joseph V. Giffin, Chicago, Ill., C. David Vaughan, Penn Payne, Atlanta, Ga., for defendants-appellants.

John T. Orr, Jr., Marina L. Lao, U.S. Dept. of Justice, Atlanta, Ga., John J. Powers, III, Marion L. Jetton, Asst. Chief, App. Sec., Antitrust Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before RONEY, FAY and CLARK, Circuit Judges.

RONEY, Circuit Judge:

This appeal from criminal convictions for violation of antitrust law asserts errors in the admission of co-conspirators' statements and improper prosecutorial argument, and challenges the sufficiency of the evidence. We affirm.

The grand jury returned an indictment against four Atlanta, Georgia, waste disposal companies and their managers for violating section 1 of the Sherman Act, 15 U.S.C.A. § 1, by conspiring to fix prices and allocate customers. The defendants were charged with effectuating the conspiracy by (1) refraining from soliciting the business of each other's established customers; (2) discouraging each other's customers from changing companies by submitting intentionally high bids to them; and (3) using identical or similar price lists as guides in quoting prices to potential customers not doing business with any conspiring corporation.

The other three companies and their managers plead *nolo contendere* and were sentenced prior to the jury trial in this case. The jury found both of the appellants, Georgia Waste Systems, Inc., and its general manager Raymond E. Dinkle, guilty.

*Co-Conspirators' Out-Of-Court Statements*

In producing evidence of a meeting at which the defendants and other co-conspirators organized and solidified their arrangement, the Government relied on testimony about statements to the witness made by one of the original individual defendants. Defendants argue that this deprived them of their Sixth Amendment right of confrontation. Settled law defeats this argument.

Donald Brooks, a salesman for one of the corporate defendants, testified as to what James Baker, his company's general man-

ager, told him about the meeting and the agreement reached there. Baker was an indicted co-conspirator. Appellants do not dispute the fact that the testimony relating to statements made by a defendant's co-conspirator in the course of the conspiracy would be admissible over a hearsay objection under Fed.R.Evid. 801(d)(2)(E). They do not contend that Baker was not shown to be a co-conspirator of the defendants by evidence other than Brooks' testimony. Rather, they argue that the failure to put Baker on the stand so that he could be cross-examined represented a tactical decision of the prosecutor which impermissibly deprived defendant of the right of confrontation. To the extent there was a tactical decision, however, the law permits it.

Defendants concede that Baker would refuse to testify without a grant of immunity. The prosecution had obtained immunity authorization from the appropriate Justice Department officials for all prospective Government witnesses on substantive matters, including named co-conspirators like Baker, with the understanding that immunity orders would only be requested from the court if it became clear in the course of the trial that this was necessary and appropriate. The defendants claim the Government sought court permission to immunize Baker for the purposes of questioning him outside the presence of the jury to then determine whether to grant him immunity for his testimony at trial. The court refused to permit this procedure. The prosecutor then decided not to take a chance on Baker's testimony, but to rely on Brooks to tell the jury what Baker had told him.

We need not decide whether the Government could immunize Baker for *voir dire* purposes and then withdraw that immunity so that he would be unavailable at trial. Immunity was never granted to Baker. This renders him "unavailable" for purposes of the Rules of Evidence and the Confrontation Clause. Fed.R.Evid. 804(a)(1); *California v. Green*, 399 U.S.

149, 168 n. 17, 90 S.Ct. 1930, 1940 n. 17, 26 L.Ed.2d 489 (1970); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir.1978).

■ The Government has no duty under the Sixth Amendment or otherwise to immunize witnesses for the benefit of the defense. *See e.g., United States v. Herman*, 589 F.2d 1191, 1199 (3d Cir.1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *United States v. Beasley*, 550 F.2d 261, 268 (5th Cir.), *cert. denied*, 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977). The Government's power to grant immunity is discretionary and the defendants have no right to subject its decision to judicial review.

### *Prosecutor's Closing Argument*

■ The prosecutor's comments during closing argument regarding Baker's failure to testify were made in response to defense counsel's comments on the Government's failure to call Baker. Defense counsel posed questions such as "Tell us, Mr. Baker, why should we believe you?" "Would you buy a home based on the word of Mr. Baker?" and "Where was Mr. Baker?", to an empty chair in the courtroom. The prosecutor answered with the comments at issue:

> Mr. Garland puts me at a disadvantage. He talks about where is Jim Baker. The judge read you the indictment at the beginning of the case and told you that Jim Baker ... [was a] defendant in this case, but you were not to consider where [he was], that is not your concern.

> Mr. Garland knows that, he knows I can't answer the questions, he puts me in that position because of the judge's instructions.

> The defendants have the power of subpoena just like we do. If Mr. Baker would come in here and say that there was no agreement, that ... all of these people were lying, why didn't [he] come?

Defendants contend that this led the jury to believe that they had the power and

burden of calling Baker to testify. The court's subsequent charge to the jury, however, informed the jurors that (1) the defendant is not required to prove his innocence or produce any evidence at all; (2) the Government has the burden of proving the defendant guilty, and if it fails to do so, the jury must acquit; (3) only the Government has the authority to seek an order granting immunity to a witness, expressly noting that "[t]he defendant has no such authority;" and (4) "the law never imposes upon a defendant in a criminal case the burden or duty of calling witnesses or producing any evidence."

The district court did not abuse its discretion in deciding that the statements did not, taken as a whole and in the context of the entire case, prejudicially affect the substantial rights of the defendants. *See United States v. Houde*, 596 F.2d 696, 703–04 (5th Cir.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979) (prosecutor is entitled to make a fair response to defense counsel's argument, and to comment on the evidence); *United States v. Ivey*, 546 F.2d 139, 144 (5th Cir.), *cert. denied*, 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977) (where the Government's rebuttal statement that either side could have called a witness is a response to defense counsel's comments on the Government's failure to call the witness, the statement is permissible provided the jury is properly instructed as to the burden of proof).

### Sufficiency of Evidence

█ Contrary to the defendants' claim that the Government failed to prove that their activities were in or affected interstate commerce, the evidence together with all reasonable inferences, viewed in the light most favorable to the Government, supports the jury's determination that the Government proved the interstate commerce element of the Sherman Act offense beyond a reasonable doubt. The conspirators included companies with out-of-state parents which transferred substantial funds out-of-state, paid for in-state operations with out-of-state checks, billed customers at out-of-state addresses, bought millions of dollars worth of equipment, including waste containers rented to customers, from out-of-state vendors, and collected refuse from out-of-state flights coming into the Atlanta airport. Without determining whether any single item standing alone would be enough, we hold the above evidence sufficient to meet the Sherman Act's requirement that defendants' activity be within the flow of interstate commerce or, if wholly local in nature, have a substantial effect on interstate commerce. *See Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743 n. 2, 96 S.Ct. 1848, 1852 n. 2, 48 L.Ed.2d 338 (1976); *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194–95, 95 S.Ct. 392, 397–98, 42 L.Ed.2d 378 (1974); *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 558, 64 S.Ct. 1162, 1176, 88 L.Ed. 1440 (1944).

AFFIRMED.