UNITED STATES of America,

v.

RUBBISH REMOVAL, INC.; Onondaga Environmental Systems, Inc.; Leaseway Haulers, Inc.; A & T Haulers, Inc.; Ace Sanitary Haulers, Inc.; Raite Rubbish Removal Corp.; Feher Rubbish Removal, Inc.; L. Michael Blumin; Joseph Tripoli, Senior; Joseph Tripoli, Junior; Francis Schrader; Thomas O'Connor, Senior; and Winfred Tousley, Defendants.

UNITED STATES of America,

v.

John MAGGIO, Defendant.

Nos. 83–CR–128, 84–CR–72.

United States District Court, N.D. New York.

Dec. 24, 1984.

As Amended Feb. 11, 1985.

U.S. Dept. of Justice Antitrust Division, New York City, for U.S.; Charles V. Reilly, Martha E. Gifford, Eric G. Waxman, III, New York City, of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., for defendant Rubbish Removal, Inc.; John J. Dee, Syracuse, N.Y., of counsel.

Hiscock, Lee, Rogers, Henley & Barclay, Syracuse, N.Y., for defendant Onondaga Environmental Systems & Tripoli, Sr.; Richard K. Hughes, Syracuse, N.Y., of counsel.

Thompson, Hine & Flory, Cleveland, Ohio, for defendant, Leaseway Haulers; Leslie Jacobs, Cleveland, Ohio, of counsel.

Eric Dadd, Attica, N.Y., for A & T Haulers.

Berger, Steingut, Weinwer, Fox & Stern, New York City, for defendant, Ace Sanitary Haulers; Lawrence I. Fox, New York City, of counsel.

Rivizzigno Aloi & DiLauro, Syracuse, N.Y., for defendants Raite Rubbish Removal & Feher Rubbish Removal; Anthony Rivizzigno, Ernest A. DelDuchetto, Syracuse, N.Y., of counsel.

Nottingham, Engel, Gordon, Kerr & Watt, Syracuse, N.Y., for defendant, L. Michael Blumin; Richard L. Engel, Syracuse, N.Y., of counsel.

DeFrancisco, Menkin & Brunetti, Syracuse, N.Y., for defendant, Joseph Tripoli, Jr.; Edward Menkin, Syracuse, N.Y., of counsel.

Joseph Fahey, Syracuse, N.Y., for defendant, Francis Schrader.

Emil Rossi, Syracuse, N.Y., for defendant, Thomas O'Connor, Sr.

McGraw & Wegerski, Syracuse, N.Y., for defendant Winfred Tousley; James R. McGraw, Syracuse, N.Y., of counsel.

Menter, Rudin & Trivelpiece, Syracuse, N.Y., for defendant Maggio; Gerald J. Mathews, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This is a criminal antitrust action in which the defendants are charged with conspiracy to allocate customers and rig bids and price quotations in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Presently before the court is a motion by the defendants to dismiss the indictment for lack of subject matter jurisdiction. Defendants contend that subject matter jurisdiction is lacking because the allegations contained in the indictment do not satisfy the interstate commerce requirement of the Sherman Act. The government contends that the allegations are more than sufficient to demonstrate an interstate commerce nexus thereby satisfying the Sherman Act's interstate commerce requirement and establishing subject matter jurisdiction. For the reasons set forth below the court finds that the indictment sufficiently alleges an interstate commerce nexus and therefore the defendants' motion to dismiss the indictment must be denied.

## BACKGROUND

The defendants are engaged in the containerized refuse removal business in Onondaga County, New York. On December 13, 1983 [1] a federal grand jury returned a one

1. One of the defendants, John Maggio, was not indicted until June 12, 1984. The Maggio indictment charges the same offense and generally tracks the language of the indictment returned against the other thirteen defendants charged herein. This court has ordered the two indictments tried together. *United States v. Rubbish Removal, Inc.*, No. 83–CR–128 (N.D. N.Y. July 12, 1984). References to the indict-

count indictment charging them with "engag[ing] in a continuing combination and conspiracy in unreasonable restraint of . . . interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1." Indictment ¶ 11. The indictment charges that the defendants conspired to allocate and divide customers and rig bids and price quotations in the provision of containerized refuse removal services in the Onondaga County area. In February, 1984 the government provided the defendants with a voluntary limited bill of particulars addressed to the interstate commerce issue. Thereafter, the defendants moved to dismiss the indictment contending that the interstate commerce allegations contained in the indictment do not satisfy the jurisdictional requirements of the Sherman Act and consequently, this court is without subject matter jurisdiction to hear the case. The government argues that the interstate commerce allegations in the indictment clearly establish this court's subject matter jurisdiction.

## DISCUSSION

A preliminary matter must be addressed before considering the interstate commerce question. The defendants take the position that this court should consider the bill of particulars in determining the sufficiency of the interstate commerce allegations in the indictment. They argue that the reason the government provided them with a voluntary bill of particulars was to allow the defendants to prepare their motion to dismiss on jurisdictional grounds.

The government contends that the sufficiency of the indictment must be determined by considering the allegations contained therein without reference to the bill of particulars. The government also argues that the letter accompanying the bill of particulars clearly indicates its position that its bill of particulars was not provided as a prerequisite to defendants' motion to dismiss. The letter, dated February 7, 1984 and addressed to defendants' lead counsel, states:

In providing this voluntary response, we do not assent to any assertion by defense counsel that our voluntary response to your request for particulars was needed to enable you to file by March 5th any motion addressing the interstate commerce allegations of the indictment. In addition, the government asserts that the record in this matter demonstrates that it has fulfilled, in a timely fashion, all conditions precedent to filing by you on March 5th of any such motion . . . .

The government provides these particulars without limitation upon its adding to or in any other way changing the information prior to or at trial.

Letter from Charles V. Reilly to Leslie W. Jacobs (Feb. 7, 1984) (providing voluntary limited bill of particulars) at 2–3.

▮▮▮▮ The purpose of a bill of particulars is to apprise the defendant of the charges against him so that he can prepare an adequate defense. *See e.g. United States v. Konefal,* 566 F.Supp. 698, 702 (N.D.N.Y.1983). The defendants here argue that a motion to dismiss the indictment is a defense and therefore, this court should consider the bill of particulars. In support of this position the defendants cite *United States v. Carrier,* 672 F.2d 300 (2d Cir.) *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982) wherein the Second Circuit stated:

A bill of particulars may not save an invalid indictment; it may provide the defendant with the evidentiary details needed to establish his defense.[5]

---

[5] Armed with a bill of particulars . . . defendant could have made a motion to dismiss the indictment prior to trial.

*United States v. Carrier,* 672 F.2d 300, 303 n. 5 (2d Cir.1982). While the cited language seems to suggest that a court may consider a bill of particulars on a motion to dismiss the indictment, this court concludes that it may not consider evidence outside the indictment on a challenge to its sufficiency. *See e.g., United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–

ment throughout this decision are to the indict-

ment in 83–CR–128.

175, 9 L.Ed.2d 136 (1962); *Russell v. United States*, 369 U.S. 749, 769–70, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962); *United States v. Mann*, 517 F.2d 259, 266–67 (5th Cir.1975) *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *United States v. Murray*, 297 F.2d 812, 819 (2d Cir.) *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); *United States v. Greater Syracuse Board of Realtors, Inc.*, 449 F.Supp. 887, 899 (N.D.N.Y.1978); 1 Wright Federal Practice and Procedure § 194 at 714 (1982).

Even if the rule were otherwise, the facts of this case would lead the court to conclude that consideration of the voluntary limited bill of particulars would be improvident. The government has clearly stated that the bill does not contain all of its evidence on the interstate commerce issue and that the list is subject to additions and modifications.[2] The defendants, therefore, are asking this court to consider a bill which the government admits is incomplete; in other words, the defendants want the court to dismiss the indictment based partially on the incomplete "evidence" contained in the voluntary bill of particulars. The court declines to do so. The indictment either adequately alleges jurisdiction or it does not; that is the only issue currently before this court. The court finds that that determination must be made from looking solely at the face of the indictment.

■ A motion to dismiss a Sherman Act indictment for lack of jurisdiction assumes the truth of the allegations and must be denied if those allegations, taken as true, state facts which would support a finding of jurisdiction. *E.g. United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 296, 65 S.Ct. 661, 663, 89 L.Ed. 951 (1945); *United States v. Greater Syracuse Board of Realtors*, 449 F.Supp. 887, 894 (N.D.N.Y.1978). The court must draw all

the inferences that can be drawn in support of the indictment. *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir.) *cert. denied*, 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1133 (1978). Additionally, the court must consider the government's allegations concerning the effects on commerce. *United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 188, 74 S.Ct. 452, 453, 98 L.Ed. 618 (1954); *United States v. Greater Syracuse Board of Realtors*, 449 F.Supp. 887, 894 n. 4 (N.D.N.Y.1978).

■ Section 1 of the Sherman Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The requirement that the illegal conduct be "in restraint of trade or commerce among the several States" has been held to be both a jurisdictional prerequisite and a substantive element of the offense. *See e.g., United States v. Greater Syracuse Board of Realtors, Inc.*, 449 F.Supp. 887, 890 (N.D.N.Y.1978). Thus, a criminal antitrust indictment must contain allegations that the defendant's illegal conduct occurred in the flow of or substantially affected interstate commerce. If the indictment fails to satisfy this requirement the court has no jurisdiction to determine the case on the merits.

■ The interstate commerce requirement may be established in either of two ways. If the defendant's conduct is within the stream of interstate commerce, it is subject to the Sherman Act. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); *McLain v. Real Estate Board Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). This is known as the "in commerce" test. *See e.g., United States v. Greater Syracuse Board*

---

**2.** The defendants have argued that the government should have provided them with all the information that it had concerning the interstate commerce issue, but the government was not under a duty to disclose its case to the defendants. Additionally, the information that

the government did provide was in response to questions framed by the defendants. The defendants' suggestion that the government could have provided them with more complete information by asking and answering its own questions is somewhat disingenuous.

*of Realtors, Inc.,* 449 F.Supp. 887, 891 (N.D.N.Y.1978). If the defendant's conduct "substantially affects" interstate commerce, it is also subject to the Sherman Act, even though that conduct may have taken place wholly within one state. *United States v. Employing Plasterers Ass'n of Chicago,* 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954); *McLain v. Real Estate Board,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Furlong v. Long Island College Hospital,* 710 F.2d 922 (2d Cir.1983). This is known as the "affecting commerce" test. *See e.g., United States v. Greater Syracuse Board of Realtors, Inc.,* 449 F.Supp. 887, 891 (N.D.N.Y.1978).

Only conduct that does not meet the "in commerce" test need be tested by the "affecting commerce" test. Nonetheless, the court finds it appropriate to examine the "affecting commerce" test first. If the indictment contains sufficient allegations to establish Sherman Act jurisdiction based on the "affecting commerce" test, it becomes unnecessary to decide whether the allega-

tions also establish jurisdiction under the more rigorous "in commerce" test.

The allegations in the indictment which relate to interstate commerce are fully set out in the margin.[3] Briefly summarized the allegations charge:

(1) that the defendants purchased substantial quantities of equipment manufactured out-of-state;

(2) that the funds used to purchase some of this equipment was obtained from out-of-state sources;

(3) that the defendants sent bills to customer's out-of-state offices;

(4) that some of defendants' customers paid their bills from out-of-state sources;

(5) that some of the defendants' customers were national corporations; and

(6) that some of the defendants' customers' trash was generated from out-of-state sources.

Defendants contend that these allegations are insufficient to establish Sherman Act

---

**3.** The relevant paragraphs of the indictment provide:

6. During the period covered by this indictment, the defendant corporations and co-conspirators were the major providers of containerized refuse removal services in the Onondaga County area. Their customers included, among others, national corporations, federal, state and county facilities, and local school districts. Total revenues from containerized refuse removal services provided by the defendant corporations and co-conspirators in the Onondaga County area from 1978 through the Spring of 1982 were about $29 million.

7. During the period covered by this indictment, defendant corporations and co-conspirators purchased or otherwise obtained substantial quantities of equipment manufactured outside the State of New York for use in the provision of containerized refuse removal services in the Onondaga County area. This equipment included various types of containers and compactors needed to satisfy the requirements of both new and established customers, and trucks and other equipment used in the storage, collection, hauling, processing and dumping of refuse. During this period, this equipment was in a continuous and uninterrupted flow of interstate and foreign commerce from sources located in Canada and in states other than the State of New York to defendant corporations and co-conspirators and their customers in the Onondaga County

area. Funds used to finance the purchase of some of this equipment were obtained from sources located in states other than in the State of New York by a defendant corporation and a co-conspirator located in the Onondaga County area.

8. During the period covered by this indictment, defendant corporations and co-conspirators located in the Onondaga County area received substantial revenues from customers' offices or banks located in states other than the State of New York and from the Treasury of the United States in payment for containerized refuse removal services provided in the Onondaga County area. To effect the receipt of certain of these revenues, defendant corporations and co-conspirators caused bills and other forms of business communications to be sent from their offices in the Onondaga County area to states other than the State of New York.

9. During the period covered by this indictment, defendant corporations and co-conspirators provided containerized refuse removal services to customers in the Onondaga County area whose refuse was generated as a consequence of activities of a substantial dollar amount within the flow of interstate commerce.

10. The activities of the defendants and co-conspirators, as described herein, were within the flow of, and substantially affected, interstate and foreign commerce.

jurisdiction under the "affecting commerce" test. The Second Circuit recently clarified what the "affecting commerce" test requirements are in this Circuit:

> [T]he inquiry must be whether the defendant's activity that has allegedly been 'infected' by unlawful conduct can be shown " 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." (citation omitted). The requisite showing will vary with the type of unlawful conduct alleged. With a price-fixing allegation ... the link between the 'infected' activities and an ultimate effect on commerce [is] easily posited, since price-fixing is generally recognized as tending to restrict output, and the complaint adequately allege[s] interstate activities ... that would be adversely affected if the local ... activities of the defendants were diminished....
>
> We therefore conclude that a plaintiff must allege sufficient facts concerning the alleged violation and its likely effect on interstate commerce to support an inference that the defendants' activities infected by illegality either have had or can reasonably be expected to have a not insubstantial effect on commerce.

*Furlong,* 710 F.2d at 926.

Thus, to withstand a motion to dismiss, the indictment must allege that the defendants' activities infected by illegality, here allocating customers and bid-rigging, have a not insubstantial effect on defendants' interstate commerce activities, here the purchase of out-of-state equipment with out-of-state funds, etc. The court must be able to conclude "as a matter of practical economics" that the conspiracy charged in the indictment substantially affected interstate commerce. *McLain v. Board of Real Estate, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980).

A number of other courts have considered the applicability of the "affecting commerce" test in the local rubbish hauling context, unfortunately with conflicting results. While it is clear that each case challenging Sherman Act jurisdiction must be determined on the basis of its own relevant economic facts, an examination of these cases is instructive.

In *J.P. Mascaro & Sons, Inc. v. William J. O'Hara, Inc.,* 565 F.2d 264, 269 (3rd Cir.1977), the Third Circuit reversed the district court's granting of summary judgment to the defendants for lack of jurisdiction. There was no question that the defendants were local rubbish collectors, although one of the more than twenty defendants did have a single out-of-state customer. The plaintiffs asserted that the Sherman Act applied notwithstanding the local nature of the defendants' business because the defendants purchased substantial amounts of equipment from out-of-state and borrowed substantial sums of money from out-of-state institutions. The court also noted that several corporate customers paid defendants from home offices located outside the state. Defendants in the instant case are quick to point out that *Mascaro* was a case which involved an out-of-state customer. That fact, however, did not weigh heavily in the court's decision. The *Mascaro* court's analysis focused primarily on the same factors that are alleged in the indictment here, namely out-of-state equipment purchases and financing.

In *Western Waste Services v. Universal Waste Control,* 616 F.2d 1094 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980), the Ninth Circuit held that Sherman Act jurisdiction had been established based primarily on substantial purchases of out-of-state equipment and the financing of those equipment purchases from out-of-state lenders. Defendants argue that *Western Waste* should not be relied upon because the Ninth Circuit uses a broader test for jurisdiction than the Second Circuit. While it is true that the Ninth Circuit employs a broader test, the Second Circuit noted in *Furlong* that the Judge in *Western Waste* relied on factors that would meet the narrower Second Circuit test. *Furlong, supra* at 925 n. 3.

In *United States v. Georgia Waste Systems, Inc.,* 731 F.2d 1580 (11th Cir.1984),

the Eleventh Circuit affirmed the criminal convictions of the defendants rejecting their challenge to jurisdiction under the Sherman Act. The court stated:

> The conspirators included companies with out-of-state parents which transferred substantial funds out-of-state, paid for in-state operations with out-of-state checks, billed customers at out-of-state addresses, bought millions of dollars worth of equipment, including waste containers rented to customers, from out-of-state vendors, and collected refuse from out-of-state flights coming into the Atlanta airport. Without determining whether any single item standing alone would be enough, we hold the above evidence sufficient to meet the Sherman Act's requirement that defendants' activity be within the flow of interstate commerce or, if wholly local in nature, have a substantial effect on interstate commerce. (citations omitted).

*United States v. Georgia Waste Systems, Inc.*, 731 F.2d at 1583.

In upholding jurisdiction the court considered many of the same factors alleged in the indictment in this case.

A number of other courts have also found jurisdiction over "local" refuse removal activities. *See e.g. A Cherney Disposal Co. v. Chicago Suburban Refuse Disposal Ass'n.*, 484 F.2d 751 (7th Cir.1973) *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *Tiger Trash v. Browning-Ferris Industries*, 560 F.2d 818 (7th Cir.1977); *United States v. Pennsylvania Refuse Removal Ass'n.*, 242 F.Supp. 794 (E.D.Pa.1965); *Central Iowa Refuse Systems, Inc. v. Des Moines Metropolitan Area Solid Waste Agency*, 557 F.Supp. 131 (S.D.Iowa 1982).

There are, however, some cases in which the courts have held that the interstate commerce nexus alleged was insufficient to establish Sherman Act jurisdiction. The defendants here rely primarily on three such cases to support their position.

In *Heille v. City of St. Paul*, 512 F.Supp. 810 (D.Minn.1981), *aff'd*, 671 F.2d 1134 (8th Cir.1982), the court held that the purchase of equipment from out-of-state sources by local rubbish collectors was insufficient to establish an interstate commerce nexus for Sherman Act purposes. The court stated:

> The closest and only reasonable nexus plaintiff can show is the fact that the equipment used to conduct their business was shipped in interstate commerce. However, neither party was in the business of buying and selling such equipment, rather the equipment was simply an incident of their trade, a one time or infrequent purchase.

*Heille*, 512 F.Supp. 813.

*Heille*, however, differs from the instant case in several significant aspects. The indictment here alleges far more interstate activities than the complaint in *Heille*. A crucial distinction is that the refuse services in *Heille* apparently did not require the use of containers. The defendants here provide a containerized refuse service and the government alleges that those containers are purchased in substantial quantities from out-of-state. This is clearly not a "one time or infrequent purchase" of equipment as in *Heille*. *Id.* Additionally, the indictment here also alleges out-of-state financing of equipment purchases, payments from out-of-state, servicing of customers in interstate commerce, and pick-up of trash generated in interstate commerce.

The Ninth Circuit in *Sun Valley Disposal Co.*, 420 F.2d 341 (9th Cir.1969), similarly held that the plaintiff had failed to establish jurisdiction where, although it had obtained containers and other supplies from out-of-state, the effect on interstate commerce of its having gone out of business as a result of defendant's acts was "incidental." *Id.* at 343. That language suggests that the court believed that the purchases in interstate commerce were insubstantial, not that the purchases had no effect on interstate commerce. Moreover, in *Western Waste* the Ninth Circuit implied that the holding in *Sun Valley* had been weakened by the Supreme Court's intervening decision in *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct.

1848, 48 L.Ed.2d 338 (1976). *Western Waste,* 616 F.2d at 1098.

In *Universal Services of Indiana v. Central Waste Systems,* 1977–1 Trade Cas. ¶ 61,244 (S.D.Ind.1977), the court held that the business of collecting was a local concern and not subject to the Sherman Act. The court stated:

> This Court is cognizant that dismissals in antitrust cases are not favored, but believes that the undisputed facts herein demonstrate that the plaintiffs and Indiana Waste Systems are engaged in a distinctly localized business in a distinctly localized market. Although, as with all local business, there is some effect on interstate commerce, such effect is minimal. This Court concludes that neither jurisdictional test [in commerce or affecting commerce] is satisfied. The defendant's motion is therefore granted, and summary judgment will be entered dismissing Count I for lack of jurisdiction.

*Id.* at 70,725.

Two of the cases relied on by the court, however, were later reversed on appeal. Additionally, the court's entire focus was on what percentage of defendant's business was in interstate commerce. After finding that only 1.7% of defendant's business was involved in interstate commerce the court concluded that such an amount was *de minimis* and hence there was no substantial effect on interstate commerce. The court did not consider whether defendant purchased substantial amounts of equipment in interstate commerce or whether substantial out-of-state financing was necessary.

 While these cases are instructive, none of them involves a motion to dismiss a criminal indictment. Most of the cited decisions involve motions for summary judgment where the court had all the evidence before it. The court here has no evidence before it. The court must determine whether the indictment, on its face, is so deficient that it must be dismissed without consideration of the evidence. The sufficiency of the indictment is a question of law, not of fact. *See e.g. United States v.*

*Mann,* 517 F.2d 259, 266 (5th Cir.1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). The test is whether the indictment is sufficient to charge an offense. *Id.*

 The allegations contained in the indictment, namely customer allocation and bid-rigging, are per se violations of the Sherman Act. Thus, under the test announced in *Furlong* the court can properly infer that the demand for the defendants' services will be diminished, thereby affecting the defendants' interstate activities, but under the *Furlong* test, the effect on interstate commerce must also be "not substantial."

The government has alleged that the defendants' illegal activities have led to restrained and suppressed competition and to prices being raised and fixed at noncompetitive levels. Indictment ¶ 14. It is also alleged that the defendants are engaged in several interstate activities including the purchase of substantial amounts of out-of-state equipment financed by out-of-state sources. Indictment ¶ 7. There are additional allegations concerning out-of-state billing and customers with out-of-state trash. Indictment ¶¶ 8, 9. Assuming the truth of these allegations, the court cannot conclude as a matter of law that the effect on interstate commerce is not substantial.

Under a classic economic analysis, the lessened competition and higher prices caused by the defendants' illegal conduct would lead to a diminished demand for their services, thereby causing a reduction in the volume of containers and other necessary equipment purchased in interstate commerce and a corresponding reduction in the need for out-of-state financing. The government has alleged that the amount of equipment purchased by the defendants from out-of-state sources is "substantial" and the inference could be drawn that the impact on these equipment purchases resulting from the defendants' illegal conduct is also substantial.

The defendants have made the argument that the above analysis is usually true

when one is dealing with elastic goods and services but is totally inapplicable in a trash case because trash hauling is an inelastic service, that is, the trash has to go somewhere regardless of the price of services. The defendants argue that, assuming trash production stays constant, a rise in prices will not diminish the demand and hence will not affect interstate commerce. The government has responded stating that it is only required to demonstrate a shift in the demand for services, and not a diminution, to show an effect on interstate commerce. *Cardio-Medical Associates v. Crozier-Chester Medical Center,* 721 F.2d 68, 72–74 (3rd Cir.1983). Whatever the merit of this position, it is not necessary to reach it as the court finds the inelasticity argument as applied here unpersuasive. A business at the economic margin may decide to have its garbage picked up less frequently or dispose of its own garbage rather than pay the higher noncompetitive price for garbage pick-up. Such a company may order fewer containers than it would in the absence of noncompetitive prices. Therefore, the court finds that the inelastic nature of trash hauling services alleged here does not automatically preclude an effect on interstate commerce.

The court is constrained to point out that at this preliminary stage the government has been given the benefit of all reasonable inferences with respect to the sufficiency of the present indictment. The preceding discussion makes clear that the court finds the issue of jurisdiction in this case a very close question. There has not yet been any factual development and this court finds that the indictment, when read in a light most favorable to the government, is adequate to survive this motion. The government, however, should be forewarned that although the court finds the present indictment sufficient on its fact to satisfy the previously described *Furlong* test, I ex-

press no view as to whether the government will ultimately be able to prove a proper interstate commerce nexus at trial. The government still must carry its heavy burden of factually establishing an interstate commerce component under the Sherman Act at trial.

Because the court finds that the indictment adequately alleges antitrust jurisdiction, the defendants' motion to dismiss the indictment is hereby denied.

IT IS SO ORDERED.